UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE OCASIO and CARMELO
OCASIO,

    Plaintiffs,

v.                                                    Case No: 8:13-cv-1962-T-36AEP

C.R. BARD, INC. and BARD
PERIPHERAL VASCULAR, INC.,

    Defendants.
_____/

# **ORDER**

This matter comes before the Court upon Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Motion to Invoke Section 768.73(2), Florida Statutes, or, in the Alternative, to Apply Arizona Law to the Claim for Punitive Damages (Doc. 161), Plaintiff's response thereto (167), Defendants' reply (Doc. 178), and Defendants' Notices of Supplemental Authority (Docs. 186, 220).  The Court heard arguments by the parties on June 17, 2020.

In the motion, Defendants argue that no punitive damages award should be allowed against them pursuant to a Florida statute that limits awards of punitive damages where such damages were previously awarded against the same defendant for the same act or single course of conduct. Doc. 161 at 1.  Alternatively, Defendants argue that Arizona law should apply, which would also bar any punitive damages award because Defendants' device was a medical device cleared by the United States Food and Drug Administration ("FDA").  *Id.* at 1-2.  Plaintiffs argue that the issue is not ripe under Florida law and should be deferred until after trial.  Doc. 167 at 4.  In response to Defendants' alternative argument under Arizona law, Plaintiffs argue that an exception to the cited provision applies because Defendants intentionally withheld material information from the FDA

in order to obtain and maintain clearance for their filter. *Id.* at 5. The Court, having considered the motion and being fully advised in the premises, will grant Defendants' motion.

**I.     BACKGROUND**

This litigation arises from injuries suffered by Plaintiff Denise Ocasio when her implanted inferior vena cava ("IVC") filter perforated her IVC. The IVC filter that was implanted in Denise Ocasio was a Bard G2®X ("G2X") filter. Doc. 48-6 at 6-7. Plaintiff filed the Complaint in this action alleging various causes of action against Defendants, C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. Doc. 1. The claims that remain to be resolved include negligence, strict products liability based on design defects, and loss of consortium. Doc. 139 at 3, 20. Plaintiffs seek compensatory and punitive damages. *Id.* at 3.

Defendants previously moved for summary judgment on Plaintiffs' claim for punitive damages on the basis that Plaintiffs did not provide clear and convincing evidence that Defendants had actual knowledge that the G2X filter would cause Denise Ocasio to develop her alleged injuries, or that Defendants acted in a grossly negligent manner with regard to Denise Ocasio's injuries. Doc. 139 at 18. The Court concluded that Plaintiffs had "set forth evidence sufficient to establish a triable issue of fact with regard to punitive damages." *Id.*

After the Court issued its Summary Judgment Order, and because of common questions of fact with numerous other actions, on August 20, 2015, the United States Judicial Panel on Multidistrict Litigation transferred this case to the United States District Court for the District of Arizona to centralize the proceedings. Doc. 142. While the multidistrict litigation was ongoing, the District of Arizona conducted a bellwether trial in *Sherr-Unia Booker v. C.R. Bard, Inc., et al.*, No. CV-16-00474-PHX-DGC (D. Ariz.). The jury in that case awarded the plaintiff two million

dollars in punitive damages. *Booker v. C.R. Bard, Inc., et al.*, No. CV-16-00474-PHX-DGC (D. Ariz. Mar 30, 2018).

This case has since been remanded from the multidistrict litigation. Doc. 143. Since the remand, Defendants filed the instant motion seeking to preclude Plaintiffs from seeking punitive damages at trial pursuant to either Florida or Arizona law. Doc. 161. Plaintiffs oppose the motion. Doc. 167.

## II.   DISCUSSION[1]

### A.   Choice of Law

Because this case is before the Court on diversity jurisdiction, the Court utilizes Florida's conflict of law principles in determining which state's law applies. *Chiles v. Novartis Pharm. Corp.*, 923 F. Supp. 2d 1330, 1331 (M.D. Fla. 2013). This Court has previously held that the issue of punitive damages may be governed by the laws of a different state than the issues of liability

---

[1] During oral argument on the Motion, Plaintiffs raised numerous new arguments, including that the Motion is an untimely dispositive motion under the Case Management Order; the prior case awarding punitive damages did not find liability on the issues presented in this case, preventing Defendants from establishing that the punitive damages award arose from the same course of conduct; the jury award in the prior case is pending review before the appellate court and subject to being vacated, so cannot be considered as a prior punitive damages award for the purposes of Defendants' motion; and Plaintiff Denise Bard received the implant that gave rise to this action prior to enactment of the Arizona law on which Defendants base their argument, and that law should not apply. The Eleventh Circuit directs that parties are "not allowed to raise at oral argument [] new issue[s] for review." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1263 (11th Cir. 2004); *see also Crouch v. Teledyne Continental Motors, Inc.*, 511 F. App'x 822, 824 n.1 (11th Cir. 2013) (declining to address an issue raised for the first time during oral argument). Likewise, this Court has stated that issues raised during oral argument are not properly before the Court. *Starbuck v. R.J. Reynolds Tobacco Co.*, 349 F. Supp. 3d 1223, 1229 (M.D. Fla. 2018). Accordingly, the Court will not consider these arguments. Nonetheless, the Court recognizes that in *McMahill v. C R Bard Inc.*, No. CV 2017-000927, 2019 WL 4899720, at *4 (Ariz. Super. July 23, 2019), an Arizona Superior Court rejected an argument that the statute at issue in this case did not apply when a device was implanted before the statute was enacted. The Court explained that the "plaintiff's rights did not vest until he filed for litigation." *Id.* Here, the Complaint was filed on July 29, 2013, approximately one year after the statute was enacted. Doc. 1; A.R.S. § 12-689.

and compensatory damages. *Id.* (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980)).

However, "[b]efore beginning a choice of law analysis, a court should determine whether a conflict of laws truly exists." *Estate of Miller ex rel. Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009). "A 'false conflict' between laws can exist . . . where the laws of the different sovereigns are different but would produce the same outcome under the facts of the case . . . ." *Id.*

Defendants contend that Arizona law may apply to the punitive damages issue because it has a greater interest in the issue. Doc. 161 at 7-8. However, Defendants also claim that the Court need not make a choice of law determination because the same result is mandated by both Florida and Arizona law—that Plaintiffs cannot seek punitive damages. *Id.* Plaintiffs do not take a stance on which law applies, but contend that the issue is not ripe under Florida law and that Arizona law does not bar punitive damages in this case. Doc. 167. The Court will examine the law of both states to determine whether a choice of law decision must be made.

### B.   Arizona Law

Defendants argue that Arizona law applies to the issue of punitive damages and that they cannot be held liable for punitive damages under Arizona law. Defendants rely on an Arizona statute that states:

> A manufacturer, service provider or seller is not liable for exemplary or punitive damages if . . . [t]he product alleged to have caused the harm was designed, manufactured, packaged, labeled, sold or represented in relevant and material respects according to the terms of an approval, conditional approval, clearance, license or similar determination of a government agency.

A.R.S. § 12-689A.1. Defendants' G2 filter and G2X filter were both cleared by the FDA. Doc. 83-3 at 1.

Plaintiffs do not dispute that the filters were cleared by the FDA, but contend that an exception to this provision applies. Specifically, the statute provides that this limitation of liability does not apply

> [I]f the claimant establishes that the manufacturer, service provider or seller, at any time before the activity or event that allegedly caused the harm . . . [i]ntentionally, and in violation of applicable regulations *as determined by final action* of the government agency, withheld from or misrepresented to the government agency information material to the approval or maintaining of approval of the product, activity or service, and the information is relevant to the harm that the claimant allegedly suffered.

*Id.* §12-689B.2. Plaintiffs contend that in their Response to Defendants' Motion for Summary Judgment, they provided sufficient evidence that Defendants withheld pertinent safety testing data from the FDA concerning the migration resistance of the Recovery filter, which was a predicate device for the filters, for this issue to be presented to a jury. Doc. 167 at 5. Defendants reply that this exception does not apply because there has been no final action by the FDA determining that Defendants withheld from or misrepresented information to the FDA. Doc. 178 at 5.

Defendants are correct that Plaintiffs cannot benefit from the misrepresentation exemption. Arizona requires a finding by the FDA that it has been defrauded for the exception to apply. *Kobar ex rel Kobar v. Novartis Corp.*, 378 F. Supp. 2d 1166, 1176 (D. Ariz. 2005). Plaintiffs present no evidence of such a finding by the FDA with respect to Defendants' filters. Accordingly, Defendants cannot be liable for punitive damages under Arizona law, as its G2 and G2X filters were cleared by the FDA. A.R.S. § 12-689A.1.

**C.   Florida Law**

Defendants also argue that if the Court applied Florida law to the punitive damages issue, they likewise cannot be found liable. In raising this argument, Defendants invoke a limitation to punitive damages contained in the Florida Statutes which provides:

> (2)(a) Except as provided in paragraph (b), punitive damages may not be awarded against a defendant in a civil action if that defendant establishes, before trial, that punitive damages have previously been awarded against that defendant in any state or federal court in any action alleging harm from the same act or single course of conduct for which the claimant seeks compensatory damages. For purposes of a civil action, the term "the same act or single course of conduct" includes acts resulting in the same manufacturing defects, acts resulting in the same defects in design, or failure to warn of the same hazards, with respect to similar units of a product.
>
> (b) In subsequent civil actions involving the same act or single course of conduct for which punitive damages have already been awarded, if the court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior, the court may permit a jury to consider an award of subsequent punitive damages. In permitting a jury to consider awarding subsequent punitive damages, the court shall make specific findings of fact in the record to support its conclusion. In addition, the court may consider whether the defendant's act or course of conduct has ceased. Any subsequent punitive damage awards must be reduced by the amount of any earlier punitive damage awards rendered in state or federal court.

§ 768.73, Fla. Stat. Plaintiffs argue that this matter is not ripe until after trial and, alternatively, that the Court should exercise its discretion to determine that the amount of punitive damages awarded was insufficient to punish Defendants' behavior. Doc. 167.

### 1. Ripeness

Plaintiffs argue that the issue of whether punitive damages may be awarded or are unavailable pursuant to section 768.73 is not ripe until after trial and that the Court should consider all the evidence at trial in ruling on whether the requirements of the statute are met. Doc. 167 at 2-4. And, in fact, there is support for this argument in the case law. For example, in *Philip Morris USA Inc. v. Martin*, 262 So. 3d 769, 772 (Fla. 4th DCA 2018), the trial court deferred ruling on this issue until after trial, and the trial court ultimately ruled on the issue based on a post-trial motion. The appellate court in *Martin*, however, did not address the propriety of this procedure. *See generally id.*

This Court did address whether such a motion was ripe before trial in *Starbuck v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-13250-WGY-HTS, 2018 WL 4781364, at *1 (M.D. Fla. Oct. 3, 2018), where the Court concluded that the motion was "not ripe for decision." The Court explained that "[n]o jury ha[d] determined whether to award punitive damages, or even whether the Defendants [were] liable." *Id.* The Court reasoned that ruling on this issue could be mooted by the jury determining that the defendants were not liable or punitive damages were not warranted. *Id.* The Court nonetheless addressed the argument on the merits. *Id.* at *2.

Similarly, in *Cross v. Wyeth Pharmaceuticals, Inc.*, 8:06-CV-429-T-23AEP, 2011 WL 2517211, at *4 (M.D. Fla. June 23, 2011), prior to trial, the defendants asked the Court to apply section 768.73(2) to prevent the plaintiff from seeking punitive damages. The Court ruled that the request was "both premature and more appropriately decided after a determination as to the defendants' liability." *Id.* However, the Court did not provide an analysis as to its decision.

Based on these cases, Plaintiffs contend that this issue is not ripe until after a trial. Doc. 167 at 3. Defendants reply that this reading of the statute is not consistent with its plain language or the legislative intent. Doc. 178 at 2-3. The statute provides that "punitive damages may not be awarded . . . if th[e] defendant establishes, *before trial*, that punitive damages have previously been awarded . . . ." § 768.73(2)(a), Fla. Stat. (emphasis added). With respect to the legislative history, Defendants cite a Final Staff Analysis which states that the bill's general effect would be to "reduce[] the number of cases where punitive damages might be awarded to plaintiffs." Final Staff Analysis, Fla. H.R. 1999 Regular Sess., HB. 775 (June 2, 1999); Doc. 178 at 3.

The Court agrees that the language of the statute requires the Court to consider the issue before trial. Indeed, in reading the exception contained in subsection (b), it is clear that the issue must be resolved before the punitive damages issue is presented to a jury. That portion of the

statute states that "the court may permit a jury to consider an award of subsequent punitive damages" "if the court determines by clear and convincing evidence that the amount of prior punitive damages awarded was insufficient to punish that defendant's behavior . . . ." § 768.73(2)(b), Fla. Stat. The statute goes on to state that "[i]n permitting a jury to consider awarding subsequent punitive damages, the court shall make specific findings of fact . . . ." *Id.* This language indicates that the Court must consider the issue of whether punitive damages may be pursued prior to the issue being considered by a jury. This is directly at odds with Plaintiffs' assertion that the issue is not ripe until after a jury has decided whether or not punitive damages are warranted.

Moreover, trial is not necessary for evidence to be presented to the Court. This Motion was not filed until well after the close of discovery. Any evidence required by Plaintiffs should be available. Accordingly, this issue is ripe.

### 2.     Applicability of § 768.73 of the Florida Statutes

Defendants assert that punitive damages previously were awarded against them in *Booker v. C.R. Bard, Inc., et al.*, No. CV-16-00474-PHX-DGC (D. Ariz. Mar 30, 2018), which was an action alleging harm from the same act or single course of conduct for which Plaintiffs seek compensatory damages. Doc. 161 at 3. To support this, Defendants provided a copy of the Complaint in the *Booker* action, which alleged strict products liability claims for a manufacturing defect, an information defect, and a design defect, as well as negligence claims for negligence in design, manufacture, failure to recall or retrofit, failure to warn, negligent misrepresentation, and negligence per se, and claims for breach of express warranty, breach of implied warranty, and fraudulent misrepresentation. Doc. 161-1 at 3. Booker's claims related to Defendants' G2® Vena Cava Filter ("G2"). *Id.* at 2. The punitive damages verdict form from the *Booker* trial, also

submitted by Defendants to support their argument, reflects an award of two million dollars. Doc. 161-2.

Plaintiffs do not dispute that this punitive damages award was entered against Defendants. Instead, their only substantive argument with respect to Florida law is that "should the Court find that the course of conduct justifying punitive damages in this case was the same course of conduct that justified the punitive damages award in . . . *Booker* . . . , it would be well within the Court's purview to make a specific finding of fact that the punitive damages awarded in the *Booker* case were insufficient to punish Defendants . . . ." Doc. 167 at 3. Plaintiffs provide no evidence to support their assertion that the damages were insufficient.

The Court agrees with Defendants that section 768.73(2) prohibits punitive damages in this case because such damages were previously awarded in *Booker*, which was an action alleging "harm from the same act or single course of conduct for which [Plaintiffs] seek[] compensatory damages." § 768.73(2)(a), Fla. Stat. The statute specifically includes in the definition of "the same act or single course of conduct" "acts resulting in the same manufacturing defects, acts resulting in the same defects in design, or failure to warn of the same hazards, with respect to similar units of a product." *Id.*

Here, as in *Booker*, Plaintiffs allege that Defendants are liable for their defective inferior vena cava filter. Doc. 1 ¶ 1. The plaintiff's claims in *Booker* were based on Defendants' G2 filter, whereas this case involves a G2X filter. This difference, however, is not significant. The G2X filter is the same design as the G2 filter, but also has a retrieval hook, and the devices are treated the same by Plaintiffs' experts. Doc. 161-4 at 1 n.1 (stating that the term "G2 filter[ in the report] is meant to include the G2, and the "G2 Express" filter . . . [which] is the G2 filter with a modified cap to include a hook on the top of the device to allow clinicians the ability to attempt to snare the

9

filter during retrieval."); *see also* Doc. 161-5 at 2 n.1 (same); Doc. 161-6 at 3 (stating that "the poor characteristics of the G2 apply equally to the G2 Express . . . ."). Additionally, the plaintiffs in both cases tie the respective filters back to the Recovery filter, which was the predicate filter for both. Doc. 1661-3 at 19-20; Doc. 67 at 19-20. Also of significance, Plaintiffs name the G2 filter—not the G2X filter—in their Complaint. Doc. 1 ¶¶ 4, 8-11. Moreover, Plaintiffs did not dispute Defendants' assertion that the act or course of conduct here is the same as in *Booker* despite the difference in the filters until oral argument. *See generally* Doc. 167.

No reason has been presented to the Court for concluding that the act or course of conduct in this case is different from that in *Booker* for which punitive damages were awarded against Defendants. The claims of the plaintiffs in both cases revolve around the same family and type of filter, and concern Defendants' conduct with respect to these filters. Accordingly, Defendants established that "punitive damages have previously been awarded against [them] in [another] court in [an] action alleging harm from the same act or single course of conduct for which [Plaintiffs] seek compensatory damages." § 768.73(2), Fla. Stat.

The next question that must be addressed is whether "clear and convincing evidence [shows] that the amount of prior punitive damages awarded was insufficient to punish [Defendants'] behavior." *Id.* Should the Court so find, it must "make specific findings of fact in the record to support its conclusion." *Id.* Additionally, in reaching this decision, the "court may consider whether [Defendants'] act or course of conduct has ceased." *Id.*

Unfortunately, and despite having the full benefit of all evidence obtained during discovery, which was completed prior to the briefing of this Motion, Plaintiffs failed to provide the Court with any basis for making such a finding in their response to Defendants' Motion or during oral argument. Doc. 167. Although the Court previously found in its Summary Judgment

Order that Plaintiffs presented sufficient facts to create a factual issue as to whether punitive damages should be awarded, this does not provide insight as to whether the two million dollars in punitive damages already awarded in *Booker* is sufficient or insufficient.

On the other hand, Defendants submitted evidence showing that they stopped selling the G2X filter in 2010. Doc. 161-8 at 3. Defendants also stopped selling the G2 filter in 2011. *Id.* In other words, Defendants' act or course of conduct has ceased. With this being the only information before the Court as to the sufficiency of the *Booker* punitive damages award, the Court can only find that clear and convincing evidence does not show that the previous punitive damages award was insufficient. Accordingly, punitive damages cannot be awarded under Florida law.

## IV. CONCLUSION

Pursuant to either Florida or Arizona law, Defendants cannot be held liable for punitive damages in this case. Under Arizona law, Defendants cannot be liable for punitive damages because they obtained clearance for their products by the FDA. A.R.S. § 12-689A.1. Under Florida law, Defendants cannot be liable for punitive damages because a prior punitive damage award has been entered against them for the same act or single course of conduct, and there is no clear and convincing evidence that this award was insufficient to punish their behavior. § 768.73, Fla. Stat. Because the result would be the same under either state's laws, the Court need not make a choice of law decision. *Estate of Miller ex rel.*, 609 F. Supp. 2d at 1244 (stating that there is a false conflict where the same result would be reached, even when the laws are different). Accordingly, it is

**ORDERED**:

**1.** Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s Motion to Invoke Section 768.73(2), Florida Statutes, or, in the Alternative, to Apply Arizona Law to the Claim for Punitive Damages (Doc. 161) is **GRANTED.**  Plaintiffs' claim for punitive damages is barred.

**DONE AND ORDERED** in Tampa, Florida on June 18, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any