IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE OCASIO, an individual, and
CARMELO OCASIO, an individual,

        Plaintiffs,

vs.                                  Case No.: 8:13-cv-01962-CEH-AEP

C. R. BARD, INC., a New Jersey corporation,
BARD PERIPHERAL VASCULAR, INC.,
(a subsidiary and/or division of defendant
C. R. BARD, INC.) an Arizona corporation,

        Defendants.

_____

**<u>JOINT PROPOSED JURY INSTRUCTIONS</u>**

## BARD'S REQUESTED JURY INSTRUCTION NO. 1

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts.  It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;
- the witness's memory;
- the witness's manner while testifying;
- any interest the witness has in the outcome of the case;
- any bias or prejudice the witness may have;
- any other evidence that contradicts the witness's testimony;
- the reasonableness of the witness's testimony in light of all the evidence; and
- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

Description of the case:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiffs, Denise and Carmelo Ocasio, claim the Defendants, C. R. Bard, Inc. and/or Bard Peripheral Vascular, Inc. designed, manufactured, and sold a medical device, an IVC filter, that was designed defectively and caused Denise Ocasio to suffer personal injuries. Defendants, which together we will call Bard, deny that claim.  Defendants also contend that, if they are found liable on any of Plaintiffs' claims, one of Plaintiff's treating physicians, Dr. David A. Picca, was negligent and contributed to Plaintiffs' alleged damages through his negligence.

<u>Burden of proof</u>:

Denise and Carmelo Ocasio have the burden of proving their case by what the law calls a "preponderance of the evidence." That means Denise and Carmelo Ocasio must prove that, in light of all the evidence, what they claim is more likely true than not. So, if you could put the evidence favoring Denise and Carmelo Ocasio and the evidence favoring Bard on opposite sides of balancing scales, Denise and Carmelo Ocasio need to make the scales tip to their side. If Denise and Carmelo Ocasio fail to meet this burden, you must find in favor of Bard.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Bard has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Bard must prove for any affirmative defense. After considering all the evidence, if you decide that Bard has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

<u>Conduct of the jury</u>:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations.  You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating.  You should keep an open mind until the end of the trial.  Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means.  This includes e-mails, text messages, phone calls, and the Internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law.  Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case.  The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it.  It's very important that you understand why these rules exist and why they're so important.  You must base your decision only on the testimony and other evidence presented in the courtroom.  It is not fair to the parties if you base your decision in any way on information you

acquire outside the courtroom.  For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source.  Only you jurors can decide a verdict in this case.  The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said.  If you do take notes, please don't share them with anyone until you go to the jury room to decide the case.  Don't let note-taking distract you from carefully listening to and observing the witnesses.  When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony.  Your notes are there only to help your memory.  They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial.  First, each side may make an opening statement, but they don't have to.  Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Denise and Carmelo Ocasio will present their witnesses and ask them questions.  After Denise and Carmelo Ocasio question the witness, Bard may ask the witness questions – this is called "cross-examining" the witness.  Then Bard will present its witnesses, and Denise and Carmelo Ocasio may cross-examine them.  You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. *See* Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

Authority:     Eleventh Circuit Civil Pattern Jury Instruction 1.1 (2020).

**Plaintiffs' Objection:** Plaintiffs object to the inclusion of the following sentence in the "Description of the Case" contained within Proposed Instruction No. 1:  "Defendants also contend that, if they are found liable on any of Plaintiffs' claims, one of Plaintiff's treating physicians, Dr. David A. Picca, was negligent and contributed to Plaintiffs' alleged damages through his negligence."  Under Florida law, the alleged negligence of Dr. Picca does not relieve Bard of liability and Defendants are prohibited from presenting evidence of subsequent medical malpractice or for alleged aggravation of injuries by medical providers. *Stuart v. Hertz Corp.*, 351 So.2d 703, 706 (Fla. 1977); *Holmes Reg'l Med. Ctr., Inc. v. Allstate Ins. Co.,* 225 So.3d 780, 783-784 (Fla. 2017). No issue regarding Dr. Pica's alleged negligence should be submitted to the jury, and no reference to his alleged negligence should be made in the jury instructions. Plaintiffs do not object to the remaining language of Bard's Proposed Instruction No. 1.

## JOINT REQUESTED JURY INSTRUCTION NO. 2

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning.  Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions.  If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence.  Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case.  If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness.  I may modify the form or phrasing of a question so that it's allowed under the evidence rules.  Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question.  If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

· First, you must submit all questions in writing.  Please don't ask any questions aloud.

· Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

9

· Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness.  You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

<u>Authority</u>:        Eleventh Circuit Civil Pattern Jury Instruction 1.4 (2020).

## **JOINT REQUESTED JURY INSTRUCTION NO. 3**

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

Authority:        Eleventh Circuit Civil Pattern Jury Instruction 3.1 (2020).

## JOINT REQUESTED JURY INSTRUCTION NO. 4

Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way.  A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice.  When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Authority:      Eleventh Circuit Civil Pattern Jury Instruction 3.2.2 (2020).

## <u>PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 5</u>

The Defendants in this case are C.R. Bard, Inc., and Bard Peripheral Vascular, Inc., also known as BPV.  C.R. Bard, Inc., is the parent company of Bard Peripheral Vascular, Inc. and is legally responsible for the liability, if any, for BPV.  Throughout these instructions and on the verdict form the Defendants will be referred to collectively as "Bard" or "Defendants."

**<u>Bard's objection(s)</u>:**

This proposed special instruction is not a pattern instruction and is not accurate.  C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. are separate legal entities and it is incorrect to state that C. R. Bard, Inc. is liable for any actions of Bard Peripheral Vascular, Inc.

**<u>Plaintiffs' Response:</u>**    The proposed instruction is consistent with Bard's stipulation, in the Proposed Joint Pre-Trial Order exchanged by the parties, that "The Defendants in this case are C. R. Bard, Inc. and Bard Peripheral Vascular, Inc., also known as BPV.  BPV is the wholly-owned subsidiary of C. R. Bard, Inc., the parent company.  Throughout this case and in instructions and on the verdict form the Defendants will be referred to collectively as 'Bard' or 'Defendants.'" In its response to Plaintiff's proposed Pre-Trial Order, Bard failed to identify the question of whether  C.R. Bard, Inc. is legally liable for the actions of Bard Peripheral Vascular, Inc., as a disputed issue of either law or fact that must be determined at trial.  Further, on the proposed verdict form, Bard has indicated it agrees to the submission of jury questions directed to the liability of "Bard" collectively.  An instruction on the meaning of references to "Bard" and "Defendants" is necessary to avoid jury confusion and properly reflects the disputed issues in the case.

## JOINT REQUESTED JURY INSTRUCTION NO. 6

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted.  But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case.  Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions.  You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact.  There's no legal difference in the weight you may give to either direct or circumstantial evidence.

Authority:     Eleventh Circuit Civil Pattern Jury Instruction 3.3 (2020).

## **JOINT REQUESTED JURY INSTRUCTION NO. 7**

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.  The parties have made the following stipulations:

[INSERT STIPULATED FACTS]

Authority: Eleventh Circuit Civil Pattern Jury Instruction 2.1 (2020).

## <u>JOINT REQUESTED JURY INSTRUCTION NO. 8</u>

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of several witnesses taken prior to this trial have been presented to you by video.  Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

<u>Authority</u>: Eleventh Circuit Civil Pattern Jury Instruction 2.2 (2020).

## JOINT REQUESTED JURY INSTRUCTION NO. 9

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

Authority:     Eleventh Circuit Civil Pattern Jury Instruction 3.4 (2020).

## JOINT REQUESTED JURY INSTRUCTION NO. 10

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact.  And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it.  People naturally tend to forget some things or remember them inaccurately.  So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception.  The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Authority:        Eleventh Circuit Civil Pattern Jury Instruction 3.5.1 (2020).

## JOINT REQUESTED JURY INSTRUCTION NO. 11

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion.  As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

Authority:     Eleventh Circuit Civil Pattern Jury Instruction 3.6.1 (2020).

## JOINT REQUESTED JURY INSTRUCTION NO. 12

In this case it is the responsibility of Denise and Carmelo Ocasio to prove every essential part of their claims by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiffs' claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiffs.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiffs' claims by a preponderance of the evidence, you should find for Bard as to that claim.

Authority:      Eleventh Circuit Civil Pattern Jury Instruction 3.7.1 (2020).

20

## **JOINT REQUESTED JURY INSTRUCTION NO. 13**

In this case, Bard asserts affirmative defenses.  Even if the Plaintiffs prove their claims by a preponderance of the evidence, Bard can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that Bard does not have to disprove Plaintiffs' claims, but if Bard raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

<u>Authority</u>:       Eleventh Circuit Civil Pattern Jury Instruction 3.7.2 (2020).

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 14

The claims in this case are as follows:

1.     *Design Defect*:  Denise Ocasio claims the Bard G2®X Filter was unreasonably dangerous because of its design and that the defective filter caused her harm.

2.     *Negligence*:  Denise Ocasio claims Bard was negligent in development, testing, design, or sale of the Bard G2®X Inferior Vena Cava Filter and that Bard's negligence caused her harm.

3.     *Loss of Consortium:* Carmelo Ocasio claims that by reason of Denise Ocasio's injuries from the Bard G2®X Filter, he has suffered a loss of her services, comfort, society and attentions.

(Defendant) denies [that] [those] claim(s) [and also claims that (claimant) was [himself] [herself] negligent in (describe the alleged comparative negligence), which caused [his] [her] harm]. [Additionally (describe any other affirmative defenses).]

The Ocasios must prove each of their claims by the preponderance of the evidence.

I will now define some of the terms you will use in deciding this case.

**Source:**  Fla. SJI 403.2.

**Bard's objection(s)**:

Plaintiffs' negligence claim should not be presented to the jury, given that a defect is the *sine qua non* of a products case based on design defect.  Including the negligence claim adds nothing and injects the risk of an inconsistent verdict.  *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976) ("At the heart of each theory [of product liability] is the requirement that the plaintiff's injury must have been caused by some defect in the product"); *Royal v. Black & Decker Mfg.*, 205 So. 2d 307, 309 (Fla. 3d DCA 1967) (same); *Consol. Aluminum v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984) ("in some cases, such as this one where all the allegations of negligence are dependent upon proof of a defect, there is no practical difference between the two theories. Since the jury found no defect, we hold that it

was inconsistent to find negligence on the part of Consolidated based on the pleadings and the proof at trial"); *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998) (same) *Anheuser-Busch, Inc. v. Lenz*, 669 So. 2d 271 (Fla. 5th DCA 1996) (same) *Terex Corp. v. Bell*, 689 So. 2d 1122, 1123 (Fla. 5th DCA 1997) (same); Fla. Std. Jury Instr. (Civ.) 403.7 Note 3 ("In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict. *See, e.g., Consolidated Aluminum Corp. v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984); *Ashby Division of Consolidated Aluminum Corp. v. Dobkin*, 458 So. 2d 335 (Fla. 3d DCA 1984). *See also Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 648 n.2 (Fla. 2015); *Moorman v. American Safety Equip.*, 594 So. 2d 795 (Fla. 4th DCA 1992)").

Federal courts in every District in Florida apply this well-established Florida law to hold that a plaintiff must prove a defect in the product that allegedly caused injury, regardless of whether the claims arise under strict liability or negligence. *See, e.g., Valencia v. Sanborn Mfg. Co.*, No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005) ("In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product . . ."); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (plaintiff required to prove defect under both strict liability and negligence); *Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822, 826, 829-30 (N.D. Fla. 1993) ("If there is no defect, then [d]efendant has not negligently designed, tested or inspected the [product].").

Bard also objects that the negligence claim framed by Plaintiffs is broader than the remaining claim in this design-defect case and invites the jury to find negligence on issues untethered to any design defect. Indeed, when this Court granted summary judgment to Bard on all of Plaintiffs' manufacturing and warnings-based claims, the Court expressly addressed the negligence claim in Count I and granted summary judgment on "failure-to-warn and manufacturing defect" within that negligence claim and denied summary judgment on the negligence claim only as to "design defect". *Ocasio v. C.R. Bard, Inc.*, No. 8:13-CV-1962-T-36AEP, 2015 WL 3496062, at *11 (M.D. Fla. June 3, 2015) (Honeywell, J.). Given that a Florida product-liability plaintiff, whether under strict liability or negligence, must plead and prove that a product is defective by one or more of the following separate theories: (1) design defect, (2) manufacturing defect, or (3) warnings defect, *see Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998); *see also Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224-26 (M.D. Fla. 2009), the only remaining theory of liability in this case is for design defect. This Court's reasoning in parsing and defining the remaining design-based negligence claim is entirely consistent with the fundamental principle of Florida law that "[t]o prevail in a products liability case under Florida law for either negligence or strict liability, [p]laintiff must establish a defect in the subject product." *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1362 (M.D. Fla. 2011); *see Cannioto v. Louisville Ladder, Inc.*, No. 8:09-CV-1892-T-30TBM, 2011 WL 2014260, at *5 (M.D. Fla. May 20, 2011) (same).

Finally, Plaintiffs' proposed instruction fails to account for or describe any of Bard's defenses and instead leaves only the bracketed language from the Florida standard without completing the substance.

**Plaintiffs' Response:**   This Court considered Bard's motion for summary judgment as to Plaintiffs' negligence claims, and granted summary judgment <u>solely</u> as to the failure to warn theories included within Plaintiff's negligence cause of action.   Even if Ms. Ocasio's claims are limited to design defect theories, submission of both negligence and strict liability claims is proper here because—as the Eleventh Circuit has recognized—Florida courts impose distinct standards when assessing claims under theories of negligence and of strict products liability. *See Jennings v. Bic Corporation*, 181 F.3d 1250, 1256-57 (11th Cir. 1999); *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th Dist. Ct. App. 1998) (stating that the progeny of *West v. Caterpillar Tractor Co*. have "emphasized that the strict liability theories are generally distinct from negligence") *see also, e.g., Covas v. Coleman, Co.*, No. 00-08541-CIV-LENARD/KLEIN, 2005 WL 5955698, 2005 U.S. Dist. LEXIS 45880, at *24 (S.D. Fla. June 13, 2005) (holding that under Florida law, "a manufacturer can be held liable for its negligent design of a product, separate and apart from any claim under the theory of strict products liability"). Moreover, even if Bard's interpretation of Florida law were correct, submission of negligence is proper here because Bard concedes that  Plaintiffs' negligence claims extend beyond theories of design defect.

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 15

A product is defective because of a design defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer.

Source:  Fla. SJI 403.7b.


**Bard's objection(s)**:

The "ordinary consumer" standard as proposed by Plaintiffs is inappropriate in a medical device products liability case.  Rather, the Court should modify the consumer-expectation test from an "ordinary consumer" to an ordinary physician or surgeon.  A Florida appellate court has recognized the "compelling" argument that, if a consumer-expectation instruction is given in a prescription medical product case, the physician or surgeon is the "ordinary consumer." *Zimmer, Inc. v. Birnbaum*, 758 So. 2d 714, 715 (Fla. 4th DCA 2000) (analyzing medical-device case without reaching the direct issue).  As a result, the instruction should reflect the "ordinary physician" or "ordinary surgeon" as the standard.  Instructing in this manner is consistent with Florida's long-standing application of the learned-intermediary doctrine.  *See E.R. Squibb & Sons, Inc. v. Farnes*, 697 So. 2d 825, 827 (Fla. 1997) (physician acts as learned intermediary between manufacturer and patient); *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989) (the physician "acting as a 'learned intermediary' between the manufacturer and the consumer, weighs the potential benefits against the dangers in deciding whether to recommend the [product] to meet the patient's needs.").

Indeed, this is the general rule in prescription drug and device cases where courts most often hold that the learned intermediary is the "consumer" for purposes of the consumer-expectation test.  *See, e.g., Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1194 (9th Cir. 2007); *Tingey v. Radionics*, 193 Fed. Appx. 747, 756 (10th Cir. 2006); *Phelps v. Sherwood Med. Indus.*, 836 F.2d 296, 302-03 (7th Cir. 1997); *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 545 (E.D. Pa. 2006) (prescriber is "intended user"); *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 430 (Tenn. 1994) (physicians are "users" of prescription medical products).

**Plaintiffs' Response:**  Plaintiffs object to the Defendants' changing the definition of unreasonably dangerous from the perspective of the "ordinary consumer" to the perspective

of the "ordinary implanting surgeon," which is not supported by Florida law, and assert the issue should be submitted using the language of Fla. SJI 403.7b. Further, the substitute language "ordinary implanting physician" proposed by Defendants is improper because, under Florida law, the physician may only implant the device with the informed consent of the patient, who may also be considered the consumer for purposes of the consumer expectations test.

## BARD'S REQUESTED JURY INSTRUCTION NO. 15

A product is defective because of a design defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.

A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary implanting physician would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer.

In deciding whether the product was defective because of a design defect, you shall consider the state-of-the-art of scientific and technical knowledge and other circumstances that existed at the time of the product's manufacture, not at the time of the injury.

Authority:   Fla. Std. Jury Instr. (Civ.) 403.7:  Strict Liability (modified for learned-intermediary doctrine); *E.R. Squibb & Sons, Inc. v. Farnes*, 697 So. 2d 825, 827 (Fla. 1997); *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989); *Zimmer, Inc. v. Birnbaum*, 758 So. 2d 714, 715 (Fla. 4th DCA 2000).

**Plaintiffs' Objection:**  Plaintiffs object to the Defendants' changing the definition of "unreasonably dangerous" to refer to the "ordinary implanting physician" rather than the "ordinary consumer" and asserts that the issue should be submitted, consistent with well-established Florida law, using. Fla. SJI 403.7b.  Further, the substitute language "ordinary implanting physician" proposed by Defendants is improper because, under Florida law, the physician may only implant the device with the informed consent of the patient, who may also be considered the consumer for purposes of the consumer expectations test. Moreover, to the extent it includes a "state of the art" defense, the instruction is deficient because it fails to clarify that Defendants bear the burden of proof.

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 16

Negligence is the failure to use reasonable care, which is the care that a reasonably careful company would use under like circumstances.

Negligence is doing something that a reasonably careful company would not do under like circumstances or failing to do something that a reasonably careful designer, manufacturer or seller would do under like circumstances.

<u>Source:</u>  Fla. SJI 403.9.

**<u>Bard's objection(s)</u>:**

Plaintiffs' negligence claim should not be presented to the jury, given that a defect is the *sine qua non* of a products case based on design defect.  Including the negligence claim adds nothing and injects the risk of an inconsistent verdict.  *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976) ("At the heart of each theory [of product liability] is the requirement that the plaintiff's injury must have been caused by some defect in the product"); *Royal v. Black & Decker Mfg.*, 205 So. 2d 307, 309 (Fla. 3d DCA 1967) (same); *Consolidated Aluminum v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984) ("in some cases, such as this one where all the allegations of negligence are dependent upon proof of a defect, there is no practical difference between the two theories. Since the jury found no defect, we hold that it was inconsistent to find negligence on the part of Consolidated based on the pleadings and the proof at trial"); *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998) (same) *Anheuser-Busch, Inc. v. Lenz*, 669 So. 2d 271 (Fla. 5th DCA 1996) (same) *Terex Corp. v. Bell*, 689 So. 2d 1122, 1123 (Fla. 5th DCA 1997) (same); Fla. Std. Jury Instr. (Civ.) 403.7 Note 3 ("In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict. *See, e.g., Consolidated Aluminum Corp. v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984); *Ashby Division of Consolidated Aluminum Corp. v. Dobkin*, 458 So. 2d 335 (Fla. 3d DCA 1984). *See also Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 648 n.2 (Fla. 2015); *Moorman v. American Safety Equip.*, 594 So. 2d 795 (Fla. 4th DCA 1992)").

Federal courts in every District in Florida apply this well-established Florida law to hold that a plaintiff must prove a defect in the product that allegedly caused injury, regardless of whether the claims arise under strict liability or negligence.  *See, e.g., Valencia v. Sanborn Mfg. Co.*, No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005) ("In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product . . ."); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (plaintiff required to prove defect under both strict liability and negligence); *Humphreys v.*

*Gen. Motors Corp.*, 839 F. Supp. 822, 826, 829-30 (N.D. Fla. 1993) ("If there is no defect, then [d]efendant has not negligently designed, tested or inspected the [product].").

Bard also objects that the negligence claim framed by Plaintiffs is broader than the remaining claim in this design-defect case and invites the jury to find negligence on issues untethered to any design defect. Indeed, when this Court granted summary judgment to Bard on all of Plaintiffs' manufacturing and warnings-based claims, the Court expressly addressed the negligence claim in Count I and granted summary judgment on "failure-to-warn and manufacturing defect" within that negligence claim and denied summary judgment on the negligence claim only as to "design defect". *Ocasio v. C.R. Bard, Inc.*, No. 8:13-CV-1962-T-36AEP, 2015 WL 3496062, at *11 (M.D. Fla. June 3, 2015) (Honeywell, J.). Given that a Florida product-liability plaintiff, whether under strict liability or negligence, must plead and prove that a product is defective by one or more of the following separate theories: (1) design defect, (2) manufacturing defect, or (3) warnings defect, *see Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998); *see also Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224-26 (M.D. Fla. 2009), the only remaining theory of liability in this case is for design defect. This Court's reasoning in parsing and defining the remaining design-based negligence claim is entirely consistent with the fundamental principle of Florida law that "[t]o prevail in a products liability case under Florida law for either negligence or strict liability, [p]laintiff must establish a defect in the subject product." *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1362 (M.D. Fla. 2011); *see Cannioto v. Louisville Ladder, Inc.*, No. 8:09-CV-1892-T-30TBM, 2011 WL 2014260, at *5 (M.D. Fla. May 20, 2011) (same).

   **Plaintiffs' Response:**   This Court considered Bard's motion for summary judgment as to Plaintiffs' negligence claims, and granted summary judgment solely as to the failure to warn theories included within Plaintiff's negligence cause of action. Even if Ms. Ocasio's claims are limited to design defect theories, submission of both negligence and strict liability claims is proper here because—as the Eleventh Circuit has recognized—Florida courts impose distinct standards when assessing claims under theories of negligence and of strict products liability. *See Jennings v. Bic Corporation*, 181 F.3d 1250, 1256-57 (11th Cir. 1999); *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th Dist. Ct. App. 1998) (stating that the progeny of *West v. Caterpillar Tractor Co.* have "emphasized that the strict liability theories are generally distinct from negligence"); *see also, e.g., Covas v. Coleman, Co.*, No. 00-08541-CIV-LENARD/KLEIN, 2005 WL 5955698, 2005 U.S. Dist. LEXIS 45880, at *24 (S.D. Fla. June 13, 2005) (holding that under Florida law, "a manufacturer can be held liable for its negligent design of a product, separate and apart from any claim under the theory of strict products liability").Moreover, even if Bard's interpretation of Florida law were correct, submission of negligence is proper here because Bard concedes that  Plaintiffs' negligence claims extend beyond theories of design defect.

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 17

Under Section 301(a) of the Food, Drug & Cosmetic Act (21 U.S. Code § 331), a manufacturer may not introduce into the stream of commerce any device that is adulterated or misbranded.  Additionally, this law prohibits the adulteration or misbranding of any device already in the stream of commerce.

A medical device is adulterated if its "quality falls below that which it purports or is represented to possess."[1]

A medical device is "misbranded" if its "labeling is false or misleading in any particular."  The term "labeling" includes "labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article."[2]

Violation of this federal statute is evidence of negligence.  It is not, however, conclusive evidence of negligence.  If you find that Bard violated this statute, you may consider that fact, together with the other facts and circumstances, in deciding whether Bard was negligent.

Source:  Fla. SJI 401.9.

### Bard's objection(s):

This proposed special instruction is in support of Plaintiffs' negligence claim.  Bard objects that Plaintiffs' negligence claim should not be presented to the jury, given that a defect is the *sine qua non* of a products case based on design defect.  Including the negligence claim adds nothing and injects the risk of an inconsistent verdict.  *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976) ("At the heart of each theory [of product liability] is the requirement that the plaintiff's injury must have been caused by some defect in the product"); *Royal v. Black & Decker Mfg.*, 205 So. 2d 307, 309 (Fla. 3d DCA 1967) (same); *Consol. Aluminum v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984) ("in some cases, such as this one where all the allegations of negligence are dependent upon proof of a defect, there is no practical difference between the two theories. Since the jury found no defect, we hold that it was inconsistent to find negligence on the part of Consolidated based on the pleadings and the proof at trial"); *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA

---

[1] Section 501, FDCA (21 USC § 351).
[2] Section 502, FDCA (21 USC § 352(a)(q)) ("misbranded"); 21 USC § 321(m) ("labeling").

1998) (same) *Anheuser-Busch, Inc. v. Lenz*, 669 So. 2d 271 (Fla. 5th DCA 1996) (same) *Terex Corp. v. Bell*, 689 So. 2d 1122, 1123 (Fla. 5th DCA 1997) (same); Fla. Std. Jury Instr. (Civ.) 403.7 Note 3 ("In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict. *See, e.g., Consolidated Aluminum Corp. v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984); *Ashby Division of Consolidated Aluminum Corp. v. Dobkin*, 458 So. 2d 335 (Fla. 3d DCA 1984). *See also Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 648 n.2 (Fla. 2015); *Moorman v. American Safety Equip.*, 594 So. 2d 795 (Fla. 4th DCA 1992)").

Federal courts in every District in Florida apply this well-established Florida law to hold that a plaintiff must prove a defect in the product that allegedly caused injury, regardless of whether the claims arise under strict liability or negligence. *See, e.g., Valencia v. Sanborn Mfg. Co.*, No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005) ("In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product . . ."); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (plaintiff required to prove defect under both strict liability and negligence); *Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822, 826, 829-30 (N.D. Fla. 1993) ("If there is no defect, then [d]efendant has not negligently designed, tested or inspected the [product].").

Bard further objects to Plaintiffs' proposed special instruction because all actions to enforce FDA requirements regarding medical devices "shall be by and in the name of the United States." 21 U.S.C. § 337(a). Therefore, the proposed special instruction violates *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Accordingly, as this Court has held on multiple occasions, basing a claim on an alleged FDCA violation is improper. "[T]o the extent that [p]laintiff's negligence claim can be construed as alleging a breach of duty owed by [d]efendant to the FDA, such a claim is impliedly preempted by § 337(a). . . . As with [p]laintiff's claims in her Amended Complaint for negligence *per se* and failure to warn, [p]laintiff's attempt to recast a claim for violation of the FDCA as a state-law negligence claim is impliedly barred by § 337(a)." *McClelland v. Medtronic, Inc.*, 944 F. Supp. 2d 1193, 1200 (M.D. Fla. 2013) (Honeywell, J.); *see Stokes v. I-Flow Corp.*, No. 6:12-CV-991-ORL-36, 2013 WL 1715427, at *4-*5 (M.D. Fla. Apr. 8, 2013) ("As a preliminary matter, the Court reiterates that only the Federal Government is authorized to enforce FDA regulations. . . . Therefore, to the extent that [p]laintiff bases his strict product liability, negligence, or failure to warn claims on [d]efendant's alleged violations of the FDCA or FDA's implementing regulations, these claims are dismissed for failure to state a claim.") (Honeywell, J.).

Bard also objects that the negligence claim framed by Plaintiffs is broader than the remaining claim in this design-defect case and invites the jury to find negligence on issues untethered to any design defect. For instance, this special instruction invites the jury to find Bard liable for negligence based on mislabeling or misbranding unconnected to any design defect. Indeed, when this Court granted summary judgment to Bard on all of Plaintiffs' manufacturing and warnings-based claims, the Court expressly addressed the negligence claim in Count I and granted summary judgment on "failure-to-warn and manufacturing defect" within that

negligence claim and denied summary judgment on the negligence claim only as to "design defect". *Ocasio v. C.R. Bard, Inc.*, No. 8:13-CV-1962-T-36AEP, 2015 WL 3496062, at *11 (M.D. Fla. June 3, 2015) (Honeywell, J.). Given that a Florida product-liability plaintiff, whether under strict liability or negligence, must plead and prove that a product is defective by one or more of the following separate theories: (1) design defect, (2) manufacturing defect, or (3) warnings defect, *see Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998); *see also Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224-26 (M.D. Fla. 2009), the only remaining theory of liability in this case is for design defect. This Court's reasoning in parsing and defining the remaining design-based negligence claim is entirely consistent with the fundamental principle of Florida law that "[t]o prevail in a products liability case under Florida law for either negligence or strict liability, [p]laintiff must establish a defect in the subject product." *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1362 (M.D. Fla. 2011); *see Cannioto v. Louisville Ladder, Inc.*, No. 8:09-CV-1892-T-30TBM, 2011 WL 2014260, at *5 (M.D. Fla. May 20, 2011) (same).

Bard also objects that Plaintiffs' proposed instructions 17, 18, and 19 together place undue emphasis on a single topic, amounting to an inappropriate comment on the evidence.

**Plaintiffs' Response:**  This Court considered Bard's motion for summary judgment as to Plaintiffs' negligence claims, and granted summary judgment <u>solely</u> as to the failure to warn theories included within Plaintiff's negligence cause of action. Even if Ms. Ocasio's claims are limited to design defect theories, submission of both negligence and strict liability claims is proper here because—as the Eleventh Circuit has recognized—Florida courts impose distinct standards when assessing claims under theories of negligence and of strict products liability. *See Jennings v. Bic Corporation*, 181 F.3d 1250, 1256-57 (11th Cir. 1999); *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th Dist. Ct. App. 1998) (stating that the progeny of *West v. Caterpillar Tractor Co.* have "emphasized that the strict liability theories are generally distinct from negligence"); *see also, e.g., Covas v. Coleman, Co.*, No. 00-08541-CIV-LENARD/KLEIN, 2005 WL 5955698, 2005 U.S. Dist. LEXIS 45880, at *24 (S.D. Fla. June 13, 2005) (holding that under Florida law, "a manufacturer can be held liable for its negligent design of a product, separate and apart from any claim under the theory of strict products liability"). Moreover, even if Bard's interpretation of Florida law were correct, submission of negligence is proper here because Bard concedes that  Plaintiffs' negligence claims extend beyond theories of design defect.

32

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 18

Under Section 499.0054, *Florida Statutes*, it is a violation of Florida law: (1) to disseminate any advertisement of any medical device that is false or misleading in any way; (2) to sell, deliver, or offer for sale any medical device for which the advertising or labeling is false or misleading; or (3) to advertise any medical device that is adulterated, as defined above.[3]

Violation of this state statute is evidence of negligence. It is not, however, conclusive evidence of negligence. If you find that Bard violated this statute, you may consider that fact, together with the other facts and circumstances, in deciding whether Bard was negligent.

Source: Fla. SJI 401.9.

### Bard's objection(s):

This proposed special instruction is in support of Plaintiffs' negligence claim. Bard objects that Plaintiffs' negligence claim should not be presented to the jury, given that a defect is the *sine qua non* of a products case based on design defect. Including the negligence claim adds nothing and injects the risk of an inconsistent verdict. *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976) ("At the heart of each theory [of product liability] is the requirement that the plaintiff's injury must have been caused by some defect in the product"); *Royal v. Black & Decker Mfg.*, 205 So. 2d 307, 309 (Fla. 3d DCA 1967) (same); *Consolidated Aluminum v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984) ("in some cases, such as this one where all the allegations of negligence are dependent upon proof of a defect, there is no practical difference between the two theories. Since the jury found no defect, we hold that it was inconsistent to find negligence on the part of Consolidated based on the pleadings and the proof at trial"); *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998) (same) *Anheuser-Busch, Inc. v. Lenz*, 669 So. 2d 271 (Fla. 5th DCA 1996) (same) *Terex Corp. v. Bell*, 689 So. 2d 1122, 1123 (Fla. 5th DCA 1997) (same); Fla. Std. Jury Instr. (Civ.) 403.7 Note 3 ("In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict. *See, e.g., Consolidated Aluminum Corp. v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984); *Ashby Division of Consolidated Aluminum Corp. v. Dobkin*, 458 So. 2d 335 (Fla. 3d DCA 1984). *See also Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 648 n.2 (Fla. 2015); *Moorman v. American Safety Equip.*, 594 So. 2d 795 (Fla. 4th DCA 1992)").

Federal courts in every District in Florida apply this well-established Florida law to hold that a plaintiff must prove a defect in the product that allegedly caused injury, regardless of whether

---

[3] *See* § 499.006(7), Fla. Stat. (defining "adulterated"); § 499.003(27), Fla. Stat. (defining "labeling").

the claims arise under strict liability or negligence.  *See, e.g., Valencia v. Sanborn Mfg. Co.*, No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005) ("In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product . . ."); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (plaintiff required to prove defect under both strict liability and negligence); *Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822, 826, 829-30 (N.D. Fla. 1993) ("If there is no defect, then [d]efendant has not negligently designed, tested or inspected the [product].").

Bard further objects to Plaintiffs' proposed special instruction because all actions to enforce FDA requirements regarding medical devices "shall be by and in the name of the United States."  21 U.S.C. § 337(a).  Therefore, the proposed special instruction violates *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).  Accordingly, as this Court has held on multiple occasions, basing a claim on an alleged FDCA violation is improper.  "[T]o the extent that [p]laintiff's negligence claim can be construed as alleging a breach of duty owed by [d]efendant to the FDA, such a claim is impliedly preempted by § 337(a). . . . As with [p]laintiff's claims in her Amended Complaint for negligence *per se* and failure to warn, [p]laintiff's attempt to recast a claim for violation of the FDCA as a state-law negligence claim is impliedly barred by § 337(a)."  *McClelland v. Medtronic, Inc.*, 944 F. Supp. 2d 1193, 1200 (M.D. Fla. 2013) (Honeywell, J.); *see Stokes v. I-Flow Corp.*, No. 6:12-CV-991-ORL-36, 2013 WL 1715427, at *4-*5 (M.D. Fla. Apr. 8, 2013) ("As a preliminary matter, the Court reiterates that only the Federal Government is authorized to enforce FDA regulations. . . . Therefore, to the extent that [p]laintiff bases his strict product liability, negligence, or failure to warn claims on [d]efendant's alleged violations of the FDCA or FDA's implementing regulations, these claims are dismissed for failure to state a claim.") (Honeywell, J.).

Plaintiffs' reliance on the Florida Drug & Cosmetic Act only further demonstrates that the special instruction is unwarranted.  Courts applying Florida law uniformly hold that private litigants cannot use the Florida version of the FDCA to support a claim.  *See Fields v. Mylan Pharm., Inc.*, No. 4:08-cv-484/RS/WCS, 2009 WL 7115134, at *2 (N.D. Fla. Feb. 11, 2009) (holding that, to the extent that a claim attempts to arise under the Florida Drug and Cosmetic Act, "[n]owhere does the Act state that it provides for a private cause of action by an individual, and [p]laintiff has provided no authority supporting implication of such private cause of action"); *see, e.g., Nelson v. Wal-Mart Stores, Inc.*, No. 4:14cv4-RH/CAS, 2014 WL 12461056, at *2 (N.D. Fla. Mar. 26, 2014) (holding that plaintiff failed to state a claim "under the Florida Drug and Cosmetic Act" and noting that multiple other Florida courts have "held that there is no private right of action under this statute").

Bard also objects that the negligence claim framed by Plaintiffs is broader than the remaining claim in this design-defect case and invites the jury to find negligence on issues untethered to any design defect.  For instance, this special instruction invites the jury to find Bard liable for negligence based on false or misleading advertising or labeling unconnected to any design defect.  Indeed, when this Court granted summary judgment to Bard on all of Plaintiffs' manufacturing and warnings-based claims, the Court expressly addressed the negligence claim

in Count I and granted summary judgment on "failure-to-warn and manufacturing defect" within that negligence claim and denied summary judgment on the negligence claim only as to "design defect". *Ocasio v. C.R. Bard, Inc.*, No. 8:13-CV-1962-T-36AEP, 2015 WL 3496062, at *11 (M.D. Fla. June 3, 2015) (Honeywell, J.). Given that a Florida product-liability plaintiff, whether under strict liability or negligence, must plead and prove that a product is defective by one or more of the following separate theories: (1) design defect, (2) manufacturing defect, or (3) warnings defect, *see Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998); *see also Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224-26 (M.D. Fla. 2009), the only remaining theory of liability in this case is for design defect. This Court's reasoning in parsing and defining the remaining design-based negligence claim is entirely consistent with the fundamental principle of Florida law that "[t]o prevail in a products liability case under Florida law for either negligence or strict liability, [p]laintiff must establish a defect in the subject product." *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1362 (M.D. Fla. 2011); *see Cannioto v. Louisville Ladder, Inc.*, No. 8:09-CV-1892-T-30TBM, 2011 WL 2014260, at *5 (M.D. Fla. May 20, 2011) (same).

Bard also objects that Plaintiffs' proposed instructions 17, 18, and 19 together place undue emphasis on a single topic, amounting to an inappropriate comment on the evidence.

**Plaintiffs' Response:** This Court considered Bard's motion for summary judgment as to Plaintiffs' negligence claims, and granted summary judgment solely as to the failure to warn theories included within Plaintiff's negligence cause of action. Even if Ms. Ocasio's claims are limited to design defect theories, submission of both negligence and strict liability claims is proper here because—as the Eleventh Circuit has recognized—Florida courts impose distinct standards when assessing claims under theories of negligence and of strict products liability. *See Jennings v. Bic Corporation*, 181 F.3d 1250, 1256-57 (11th Cir. 1999); *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th Dist. Ct. App. 1998) (stating that the progeny of *West v. Caterpillar Tractor Co.* have "emphasized that the strict liability theories are generally distinct from negligence"); *see also, e.g., Covas v. Coleman, Co.*, No. 00-08541-CIV-LENARD/KLEIN, 2005 WL 5955698, 2005 U.S. Dist. LEXIS 45880, at *24 (S.D. Fla. June 13, 2005) (holding that under Florida law, "a manufacturer can be held liable for its negligent design of a product, separate and apart from any claim under the theory of strict products liability"). . Moreover, even if Bard's interpretation of Florida law were correct, submission of negligence is proper here because Bard concedes that  Plaintiffs' negligence claims extend beyond theories of design defect.

35

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 19

You have received evidence of standards within the medical device industry as well as evidence of Bard's internal policies and procedures.

Bard's violation of industry standards or its own internal policies and procedures is evidence of negligence.  However, it is not conclusive evidence of negligence.  If you find that Bard violated industry standards or its own internal policies and procedures, you may consider that fact, together with the other facts and circumstances, in deciding whether Bard was negligent.[4]

Source:  Fla. SJI 403.9.

### Bard's objection(s):

This proposed special instruction is in support of Plaintiffs' negligence claim.  Bard objects that Plaintiffs' negligence claim should not be presented to the jury, given that a defect is the *sine qua non* of a products case based on design defect.  Including the negligence claim adds nothing and injects the risk of an inconsistent verdict.  *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976) ("At the heart of each theory [of product liability] is the requirement that the plaintiff's injury must have been caused by some defect in the product"); *Royal v. Black & Decker Mfg.*, 205 So. 2d 307, 309 (Fla. 3d DCA 1967) (same); *Consolidated Aluminum v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984) ("in some cases, such as this one where all the allegations of negligence are dependent upon proof of a defect, there is no practical difference between the two theories. Since the jury found no defect, we hold that it was inconsistent to find negligence on the part of Consolidated based on the pleadings and the proof at trial"); *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998) (same) *Anheuser-Busch, Inc. v. Lenz*, 669 So. 2d 271 (Fla. 5th DCA 1996) (same) *Terex Corp. v. Bell*, 689 So. 2d 1122, 1123 (Fla. 5th DCA 1997) (same); Fla. Std. Jury Instr. (Civ.) 403.7 Note 3 ("In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict. *See, e.g., Consolidated Aluminum Corp. v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984); *Ashby Division of Consolidated Aluminum*

---

[4] *Dean Witter Reynolds, Inc. v. Hammock*, 489 So. 2d 761 (Fla. 1st DCA 1986) ("Case law is clear that evidence of violation of industry standards is admissible as non-conclusive evidence of negligence.... Therefore, we find the trial court erred in excluding evidence relating to industry standards generally and DWR's procedures and policies.") (collecting cases); *Marks v. Mandel*, 477 So. 2d 1036 (Fla. 3d DCA 1985) (internal manuals "should be admitted when they contain either 1) evidence of a general industry custom or standard, or 2) evidence that the defendant violated its own policy or an industry standard.").

*Corp. v. Dobkin*, 458 So. 2d 335 (Fla. 3d DCA 1984). *See also Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 648 n.2 (Fla. 2015); *Moorman v. American Safety Equip.*, 594 So. 2d 795 (Fla. 4th DCA 1992)").

Federal courts in every District in Florida apply this well-established Florida law to hold that a plaintiff must prove a defect in the product that allegedly caused injury, regardless of whether the claims arise under strict liability or negligence. *See, e.g., Valencia v. Sanborn Mfg. Co.*, No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005) ("In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product . . ."); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (plaintiff required to prove defect under both strict liability and negligence); *Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822, 826, 829-30 (N.D. Fla. 1993) ("If there is no defect, then [d]efendant has not negligently designed, tested or inspected the [product].").

Bard also objects that the negligence claim framed by Plaintiffs is broader than the remaining claim in this design-defect case and invites the jury to find negligence on issues untethered to any design defect.  This special instruction invites the jury to find Bard liable for negligence based on undefined industry standards, policies, and procedures unconnected to any design defect.  Indeed, when this Court granted summary judgment to Bard on all of Plaintiffs' manufacturing and warnings-based claims, the Court expressly addressed the negligence claim in Count I and granted summary judgment on "failure-to-warn and manufacturing defect" within that negligence claim and denied summary judgment on the negligence claim only as to "design defect".  *Ocasio v. C.R. Bard, Inc.*, No. 8:13-CV-1962-T-36AEP, 2015 WL 3496062, at *11 (M.D. Fla. June 3, 2015) (Honeywell, J.).  Given that a Florida product-liability plaintiff, whether under strict liability or negligence, must plead and prove that a product is defective by one or more of the following separate theories: (1) design defect, (2) manufacturing defect, or (3) warnings defect, *see Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998); *see also Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224-26 (M.D. Fla. 2009), the only remaining theory of liability in this case is for design defect.  This Court's reasoning in parsing and defining the remaining design-based negligence claim is entirely consistent with the fundamental principle of Florida law that "[t]o prevail in a products liability case under Florida law for either negligence or strict liability, [p]laintiff must establish a defect in the subject product."  *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1362 (M.D. Fla. 2011); *see Cannioto v. Louisville Ladder, Inc.*, No. 8:09-CV-1892-T-30TBM, 2011 WL 2014260, at *5 (M.D. Fla. May 20, 2011) (same).

Bard also objects that Plaintiffs' proposed instructions 17, 18, and 19 together place undue emphasis on a single topic, amounting to an inappropriate comment on the evidence.

**Plaintiffs' Response:**  This Court considered Bard's motion for summary judgment as to Plaintiffs' negligence claims, and granted summary judgment <u>solely</u> as to the failure to warn theories included within Plaintiff's negligence cause of action.  Even if Ms. Ocasio's claims are limited to design defect theories, submission of both negligence and strict liability

claims is proper here because—as the Eleventh Circuit has recognized—Florida courts impose distinct standards when assessing claims under theories of negligence and of strict products liability. *See Jennings v. Bic Corporation*, 181 F.3d 1250, 1256-57 (11th Cir. 1999); *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th Dist. Ct. App. 1998) (stating that the progeny of *West v. Caterpillar Tractor Co.* have "emphasized that the strict liability theories are generally distinct from negligence"); *see also, e.g., Covas v. Coleman, Co.*, No. 00-08541-CIV-LENARD/KLEIN, 2005 WL 5955698, 2005 U.S. Dist. LEXIS 45880, at *24 (S.D. Fla. June 13, 2005) (holding that under Florida law, "a manufacturer can be held liable for its negligent design of a product, separate and apart from any claim under the theory of strict products liability"). . Moreover, even if Bard's interpretation of Florida law were correct, submission of negligence is proper here because Bard concedes that  Plaintiffs' negligence claims extend beyond theories of design defect.

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 20

Negligence or a defect in a product is a legal cause of loss, injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury or damage, so that it can reasonably be said that, but for the defect or negligence, the loss, injury or damage would not have occurred.

In order to be regarded as a legal cause of loss, injury or damage, negligence or a defect in a product need not be the only cause. A defect in a product or negligence may be a legal cause of loss, injury or damage even though it operates in combination with the act of another, some natural cause or some other cause if the defect or negligence contributes substantially to producing such loss, injury or damage.

Source: Fla. SJI 403.12.

**Bard's objection(s)**:

The negligence portion of this legal cause instruction is unnecessary and unwarranted. Bard objects that Plaintiffs' negligence claim should not be presented to the jury, given that a defect is the *sine qua non* of a products case based on design defect. Including the negligence claim adds nothing and injects the risk of an inconsistent verdict. *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976) ("At the heart of each theory [of product liability] is the requirement that the plaintiff's injury must have been caused by some defect in the product"); *Royal v. Black & Decker Mfg.*, 205 So. 2d 307, 309 (Fla. 3d DCA 1967) (same); *Consolidated Aluminum v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984) ("in some cases, such as this one where all the allegations of negligence are dependent upon proof of a defect, there is no practical difference between the two theories. Since the jury found no defect, we hold that it was inconsistent to find negligence on the part of Consolidated based on the pleadings and the proof at trial"); *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998) (same) *Anheuser-Busch, Inc. v. Lenz*, 669 So. 2d 271 (Fla. 5th DCA 1996) (same) *Terex Corp. v. Bell*, 689 So. 2d 1122, 1123 (Fla. 5th DCA 1997) (same); Fla. Std. Jury Instr. (Civ.) 403.7 Note 3 ("In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict. *See, e.g., Consolidated Aluminum Corp. v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984); *Ashby Division of Consolidated Aluminum Corp. v. Dobkin*, 458 So. 2d 335 (Fla. 3d DCA 1984). *See also Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 648 n.2 (Fla. 2015); *Moorman v. American Safety Equip.*, 594 So. 2d 795 (Fla. 4th DCA 1992)").

Federal courts in every District in Florida apply this well-established Florida law to hold that a plaintiff must prove a defect in the product that allegedly caused injury, regardless of whether the claims arise under strict liability or negligence. *See, e.g., Valencia v. Sanborn Mfg. Co*., No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005) ("In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product . . ."); *Blinn v. Smith & Nephew Richards, Inc*., 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (plaintiff required to prove defect under both strict liability and negligence); *Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822, 826, 829-30 (N.D. Fla. 1993) ("If there is no defect, then [d]efendant has not negligently designed, tested or inspected the [product].").

    **Plaintiffs' Response:**   This Court considered Bard's motion for summary judgment as to Plaintiffs' negligence claims, and granted summary judgment <u>solely</u> as to the failure to warn theories included within Plaintiff's negligence cause of action.  Even if Ms. Ocasio's claims are limited to design defect theories, submission of both negligence and strict liability claims is proper here because—as the Eleventh Circuit has recognized—Florida courts impose distinct standards when assessing claims under theories of negligence and of strict products liability. *See Jennings v. Bic Corporation*, 181 F.3d 1250, 1256-57 (11th Cir. 1999); *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th Dist. Ct. App. 1998) (stating that the progeny of *West v. Caterpillar Tractor Co.* have "emphasized that the strict liability theories are generally distinct from negligence"); *see also, e.g., Covas v. Coleman, Co.*, No. 00-08541-CIV-LENARD/KLEIN, 2005 WL 5955698, 2005 U.S. Dist. LEXIS 45880, at *24 (S.D. Fla. June 13, 2005) (holding that under Florida law, "a manufacturer can be held liable for its negligent design of a product, separate and apart from any claim under the theory of strict products liability").Moreover, even if Bard's interpretation of Florida law were correct, submission of negligence is proper here because Bard concedes that  Plaintiffs' negligence claims extend beyond theories of design defect.

## BARD'S REQUESTED JURY INSTRUCTION NO. 20

A defect in a product is a legal cause of injury if it directly and in natural and continuous sequence produces or contributes substantially to producing such injury, so that it can reasonably be said that, but for the defect, the injury would not have occurred.

Authority:      Fla. Std. Jury Instr. (Civ.) 403.12:  Legal Cause.  Although Plaintiffs object below, Bard stands by its proposed standard instruction on defect as legal cause and refers the Court to Bard's objections stated above to Plaintiffs' proposed instructions on negligence.

**Plaintiffs' Objections:**  Bard's proposed instruction on legal cause is insufficient because it fails to instruct the jury that Bard's negligence may be a legal cause of Plaintiffs' injuries. Plaintiffs are entitled to submit their negligence theories to the jury under Florida law. This Court considered Bard's motion for summary judgment as to Plaintiffs' negligence claims, and granted summary judgment solely as to the failure to warn theories included within Plaintiff's negligence cause of action.  Even if Ms. Ocasio's claims are limited to design defect theories, submission of both negligence and strict liability claims is proper here because—as the Eleventh Circuit has recognized—Florida courts impose distinct standards when assessing claims under theories of negligence and of strict products liability. *See Jennings v. Bic Corporation*, 181 F.3d 1250, 1256-57 (11th Cir. 1999); *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th Dist. Ct. App. 1998) (stating that the progeny of *West v. Caterpillar Tractor Co*. have "emphasized that the strict liability theories are generally distinct from negligence"); *see also, e.g., Covas v. Coleman, Co.*, No. 00-08541-CIV-LENARD/KLEIN, 2005 WL 5955698, 2005 U.S. Dist. LEXIS 45880, at *24 (S.D. Fla. June 13, 2005) (holding that under Florida law, "a manufacturer can be held liable for its negligent design of a product, separate and apart from any claim under the theory of strict products liability").Moreover, even if Bard's interpretation of Florida law were correct, submission of negligence is proper here because Bard concedes that  Plaintiffs' negligence claims extend beyond theories of design defect.

## PLAINTIFF'S REQUESTED JURY INSTRUCTION NO. 21

The issues you must decide on the Ocasios' claims against Bard are as follows:

1. *Design Defect.* You must decide (1) whether the Bard G2®X Filter reached Denise Ocasio without substantial change affecting its condition and, if so, (2) whether the Bard G2®X Filter failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable to Bard and, if so, (3) whether that failure was a legal cause of the loss, injury or damage to Denise Ocasio.

2. *Negligence.* You must decide whether Bard was negligent in the development, testing, design, or sale of the Bard G2®X Filter, and, if so, whether that was a legal cause of the loss, injury or damage to Denise Ocasio.

3. *Loss of Consortium.* Whether, by reason of Denise Ocasio's injuries from the Bard G2®X Filter, Carmelo Ocasio has suffered a loss of her services, comfort, society and attentions.

Source:  Fla. SJI 403.15.

### Bard's objection(s):

The "ordinary consumer" standard as proposed by Plaintiffs is inappropriate in a medical device products liability case.  Rather, the Court should modify the consumer-expectation test from an "ordinary consumer" to an ordinary physician or surgeon.  A Florida appellate court has recognized the "compelling" argument that, if a consumer-expectation instruction is given in a prescription medical product case, the physician or surgeon is the "ordinary consumer." *Zimmer, Inc. v. Birnbaum*, 758 So. 2d 714, 715 (Fla. 4th DCA 2000) (analyzing medical-device case without reaching the direct issue).  As a result, the instruction should reflect the "ordinary physician" or "ordinary surgeon" as the standard.  Instructing in this manner is consistent with Florida's long-standing application of the learned-intermediary doctrine.  *See E.R. Squibb & Sons, Inc. v. Farnes*, 697 So. 2d 825, 827 (Fla. 1997) (physician acts as learned intermediary between manufacturer and patient); *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989) (the physician "acting as a 'learned intermediary' between the manufacturer and the consumer, weighs the potential benefits against the dangers in deciding whether to recommend the [product] to meet the patient's needs.").

Indeed, this is the general rule in prescription drug and device cases where courts most often hold that the learned intermediary is the "consumer" for purposes of the consumer-expectation test. *See, e.g., Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1194 (9th Cir. 2007); *Tingey v. Radionics*, 193 Fed. Appx. 747, 756 (10th Cir. 2006); *Phelps v. Sherwood Med. Indus.*, 836 F.2d 296, 302-03 (7th Cir. 1997); *Colacicco v. Apotex, Inc.*, 432 F. Supp. 2d 514, 545 (E.D. Pa. 2006) (prescriber is "intended user"); *Pittman v. Upjohn Co.*, 890 S.W.2d 425, 430 (Tenn. 1994) (physicians are "users" of prescription medical products).

Bard further objects that Plaintiffs' negligence claim should not be presented to the jury, given that a defect is the *sine qua non* of a products case based on design defect.  Including the negligence claim adds nothing and injects the risk of an inconsistent verdict. *See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976) ("At the heart of each theory [of product liability] is the requirement that the plaintiff's injury must have been caused by some defect in the product"); *Royal v. Black & Decker Mfg.*, 205 So. 2d 307, 309 (Fla. 3d DCA 1967) (same); *Consolidated Aluminum v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984) ("in some cases, such as this one where all the allegations of negligence are dependent upon proof of a defect, there is no practical difference between the two theories. Since the jury found no defect, we hold that it was inconsistent to find negligence on the part of Consolidated based on the pleadings and the proof at trial"); *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. 3d DCA 1998) (same) *Anheuser-Busch, Inc. v. Lenz*, 669 So. 2d 271 (Fla. 5th DCA 1996) (same) *Terex Corp. v. Bell*, 689 So. 2d 1122, 1123 (Fla. 5th DCA 1997) (same); Fla. Std. Jury Instr. (Civ.) 403.7 Note 3 ("In cases involving both negligence and defective design, submission of both claims may result in an inconsistent verdict. *See, e.g., Consolidated Aluminum Corp. v. Braun*, 447 So. 2d 391 (Fla. 4th DCA 1984); *Ashby Division of Consolidated Aluminum Corp. v. Dobkin*, 458 So. 2d 335 (Fla. 3d DCA 1984). *See also Coba v. Tricam Indus., Inc.*, 164 So. 3d 637, 648 n.2 (Fla. 2015); *Moorman v. American Safety Equip.*, 594 So. 2d 795 (Fla. 4th DCA 1992)").

Federal courts in every District in Florida apply this well-established Florida law to hold that a plaintiff must prove a defect in the product that allegedly caused injury, regardless of whether the claims arise under strict liability or negligence. *See, e.g., Valencia v. Sanborn Mfg. Co.*, No. 04-21416-CIV, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005) ("In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product . . ."); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (plaintiff required to prove defect under both strict liability and negligence); *Humphreys v. Gen. Motors Corp.*, 839 F. Supp. 822, 826, 829-30 (N.D. Fla. 1993) ("If there is no defect, then [d]efendant has not negligently designed, tested or inspected the [product].").

Bard also objects that the negligence claim framed by Plaintiffs is broader than the remaining claim in this design-defect case and invites the jury to find negligence on issues untethered to any design defect.  Indeed, when this Court granted summary judgment to Bard on all of Plaintiffs' manufacturing and warnings-based claims, the Court expressly addressed the

negligence claim in Count I and granted summary judgment on "failure-to-warn and manufacturing defect" within that negligence claim and denied summary judgment on the negligence claim only as to "design defect". *Ocasio v. C.R. Bard, Inc.*, No. 8:13-CV-1962-T-36AEP, 2015 WL 3496062, at *11 (M.D. Fla. June 3, 2015) (Honeywell, J.). Given that a Florida product-liability plaintiff, whether under strict liability or negligence, must plead and prove that a product is defective by one or more of the following separate theories: (1) design defect, (2) manufacturing defect, or (3) warnings defect, *see Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998); *see also Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1224-26 (M.D. Fla. 2009), the only remaining theory of liability in this case is for design defect. This Court's reasoning in parsing and defining the remaining design-based negligence claim is entirely consistent with the fundamental principle of Florida law that "[t]o prevail in a products liability case under Florida law for either negligence or strict liability, [p]laintiff must establish a defect in the subject product." *Citizens Prop. Ins. Corp. v. Simkar LLC*, 813 F. Supp. 2d 1356, 1362 (M.D. Fla. 2011); *see Cannioto v. Louisville Ladder, Inc.*, No. 8:09-CV-1892-T-30TBM, 2011 WL 2014260, at *5 (M.D. Fla. May 20, 2011) (same).

Finally, Bard objects that it is not customary to instruct at this stage on the consortium claim. *See* Fla. Std. Jury Instr. (Civ.) 403.15. Consortium is a derivative claim and is usually treated only as a damages issue. Notably, Plaintiffs' proposed verdict form does not include a liability question on the consortium claim.

Plaintiffs' Response:  Plaintiffs object to the Defendants' changing the definition of unreasonably dangerous from the perspective of the "ordinary consumer" to the perspective of the "ordinary implanting surgeon," which is not supported by Florida law, and assert the issue should be submitted using Fla. SJI 403.7b. Further, the substitute language "ordinary implanting physician" proposed by Defendants is improper because, under Florida law, the physician may only implant the device with the informed consent of the patient, who may also be considered the consumer for purposes of the consumer expectations test.

Additionally, this Court considered Bard's motion for summary judgment as to Plaintiffs' negligence claims, and granted summary judgment solely as to the failure to warn theories included within Plaintiff's negligence cause of action. Even if Ms. Ocasio's claims are limited to design defect theories, submission of both negligence and strict liability claims is proper here because—as the Eleventh Circuit has recognized—Florida courts impose distinct standards when assessing claims under theories of negligence and of strict products liability. *See Jennings v. Bic Corporation*, 181 F.3d 1250, 1256-57 (11th Cir. 1999); *Ferayorni v. Hyundai Motor Co.*, 711 So.2d 1167, 1170 (Fla. 4th Dist. Ct. App. 1998) (stating that the progeny of *West v. Caterpillar Tractor Co*. have "emphasized that the strict liability theories are generally distinct from negligence"); *see also, e.g., Covas v. Coleman, Co.*, No. 00-08541-CIV-LENARD/KLEIN, 2005 WL 5955698, 2005 U.S. Dist. LEXIS 45880, at *24 (S.D. Fla. June 13, 2005) (holding that under Florida law, "a manufacturer can be held liable for its negligent design of a product, separate and apart from any claim under

the theory of strict products liability"). Moreover, even if Bard's interpretation of Florida law were correct, submission of negligence is proper here because Bard concedes that Plaintiffs' negligence claims extend beyond theories of design defect.

## BARD'S REQUESTED JURY INSTRUCTION NO. 21

The issues you must decide on the claims of Denise and Carmelo Ocasio against Bard are:

Whether the IVC filter failed to perform as safely as an ordinary implanting physician would expect when used as intended or in a manner reasonably foreseeable by the manufacturer and the IVC filter reached Denise Ocasio without substantial change affecting the condition and, if so, whether that failure was a legal cause of the injury to Denise Ocasio.

Authority: Fla. Std. Jury Instr. (Civ.) 403.15:  Issues on Main Claim (modified for learned-intermediary doctrine); *E.R. Squibb & Sons, Inc. v. Farnes*, 697 So. 2d 825, 827 (Fla. 1997); *Felix v. Hoffmann-LaRoche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989); *Zimmer, Inc. v. Birnbaum*, 758 So. 2d 714, 715 (Fla. 4th DCA 2000) ("Under the facts of this case, [the manufacturer] compellingly argues that the trial court erred in failing to identify the surgeon who installed the [medical device] as the 'ordinary consumer' for the purpose of the jury charge" in the Florida Standard Jury Instructions).

## Plaintiff's objection:

Plaintiffs object to the Defendants' changing the definition of unreasonably dangerous  from "ordinary consumer," which is unsupported by Florida law, and assert the issue should be submitted using. Fla. SJI 403.7b. Further, the language "ordinary implanting physician" is improper because, under Florida law, the physician may only implant the device with the informed consent of the patient, who may also be considered the consumer for purposes of the consumer expectations test. This non-standard instruction is an inappropriate comment on the weight of the evidence.

46

## BARD'S REQUESTED JURY INSTRUCTION NO. 22

In considering whether the IVC filter performed as safely as an ordinary implanting physician would expect, you may consider whether the benefit of the product's design outweighed the risks of that design and whether a reasonable alternative design existed.

Authority:       *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 511 (Fla. 2015).  Although Plaintiffs object below, Bard's proposed instruction follows the language and reasoning set forth by the Supreme Court of Florida in the *Aubin* opinion.

**Plaintiffs' Objections:** Plaintiffs object to this requested instruction because in approaching design defect claims, the Florida Supreme Court has held it adheres to the consumer expectations test, as set forth in the Second Restatement, and rejects the categorical adoption of the Third Restatement and its reasonable alternative design requirement. *Aubin v. Union Carbide Corp.,* 177 So. 3d 489, 510 (Fla. 2015).  Plaintiffs also object to the Defendants' changing the definition of unreasonably dangerous  from "ordinary consumer" and assert the issue should be submitted using. Fla. SJI 403.7b. This non-standard instruction is an inappropriate comment on the weight of the evidence.

## BARD'S REQUESTED JURY INSTRUCTION NO. 23

In considering whether the IVC filter performed as safely as an ordinary implanting physician would expect, you may consider the magnitude and probability of the foreseeable risks of harm, the instructions and warnings accompanying the product, and the nature and strength of expectations regarding the product, including expectations arising from product portrayal and marketing.

Authority:   *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 511 (Fla. 2015).  Although Plaintiffs object below, Bard's proposed instruction follows the language and reasoning set forth by the Supreme Court of Florida in the *Aubin* opinion.

**Plaintiffs' Objections:** Plaintiffs object to the Defendants' changing the definition of unreasonably dangerous from "ordinary consumer," which is unsupported by Florida law, and assert the issue should be submitted using the language found in Fla. SJI 403.7b. The language "ordinary implanting physician" is improper because, under Florida law, the physician may only implant the device with the informed consent of the patient, who may also be considered the consumer for purposes of the consumer expectations test. Moreover, among other things, in design defect claims, the Florida Supreme Court has held it adheres to the consumer expectations test, as set forth in the Second Restatement. *Aubin v. Union Carbide Corp.* 177 So. 3d 489, 510 (Fla. 2015).  Plaintiffs also object to the Defendants' changing the definition of unreasonably dangerous from "ordinary consumer" and assert the issue should be submitted using. Fla. SJI 403.7b. This non-standard instruction is an inappropriate comment on the weight of the evidence.

## BARD'S REQUESTED JURY INSTRUCTION NO. 24

The IVC filter complied with federal statutes and regulations promulgated by the federal Food & Drug Administration.  You should consider this fact as evidence that the product was not defective.  Compliance with these standards, however, does not prevent you from finding that the product was defective if you are convinced by the preponderance of the evidence that is so.

Authority:    § 768.1256, Fla. Stat. (creating presumption); *Fla. Power & Light Co. v. Glazer*, 671 So. 2d 211 (Fla. 3d DCA 1996).

**Plaintiffs' Objections:**  Plaintiffs object to the instruction because it fails to identify which "federal statutes and regulations" the jury should consider, inviting the jury to find Bard's product was not defective based on Bard's compliance with unspecified "statutes and regulations" that have nothing to do with the existence of a product defect or any other matter at issue, including, but not limited to, the requirements for "clearance" of a product under section 510(k) of the FDA. *See, e.g., In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 U.S. Dist. LEXIS 193824, at *22-24 (D. Ariz. Nov. 22, 2017) (noting that FDA guidance on section 510(k) clearance  "makes clear that it does not mandate any particular course of action, instead leaving much to the discretion of filter manufacturers and providing guidance instead of imposing specific requirements."). Further, the instruction fails to instruct the jury as to the standards for finding Bard "in compliance" with the unspecified "standards and regulations," inviting the jury to improperly apply the law. Lastly, Plaintiffs object that this non-standard instruction is an inappropriate comment on the weight of the evidence.

## **BARD'S REQUESTED JURY INSTRUCTION NO. 25.**

A manufacturer is not an insurer of its product.  There is no duty to sell a product that is accident proof or injury proof.  A product is not defective or unreasonably dangerous merely because it is possible to be injured while using it.

Thus, the mere fact that an injury occurs while one is using a product is not sufficient to show that the product was improperly designed or that it was defective or unreasonably dangerous.

Authority:      *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976); *Ford Motor Co. v. Evancho*, 327 So. 2d 201 (Fla. 1976); *Husky Indus. v. Black*, 434 So. 2d 988 (Fla. 4th DCA 1983); *Lash v. Noland*, 321 So. 2d 104 (Fla. 4th DCA 1975); *Conroy v. Briley*, 191 So. 2d 601 (Fla. 1st DCA 1966).

**Plaintiffs' Objections:**  Plaintiffs object to this requested instruction because the proper instructions for design defect are set forth in the pattern jury charge, and the additional verbiage proposed by Defendants in this non-standard instruction inappropriately comments on the weight of the evidence and will lead to confusion and potential inconsistency in the jury's findings.  Moreover, even if the principles cherry-picked from legal analyses in the authorities cited by Defendant were proper for inclusion in a jury instruction, they are inappropriate as applied to this case, in which the Plaintiffs do not allege that the mere fact that injury occurred during the use of Bard's product proves design defect, and in which the Court has already determined (in ruling on Defendants' motion for summary judgment), that Plaintiffs have submitted ample evidence beyond the mere occurrence of such an injury, to support the design defect claim.

## BARD'S REQUESTED JURY INSTRUCTION NO. 26

If the preponderance of the evidence does not support Plaintiffs' claim, your verdict should be for Bard.

If, however, the preponderance of the evidence supports Plaintiffs' claim, then you shall consider the defense raised by Bard.

On the defense, the issues for you to decide are whether Dr. David A. Picca was negligent; and, if so, whether that negligence was a contributing legal cause of injury or damage to Plaintiff Denise Ocasio.

Authority:    Fla. Std. Jury Instr. (Civ.) 403.17: Burden of Proof on Main Claim (modified to reflect preponderance of the evidence burden)

       Fla. Std. Jury Instr. (Civ.) 403.18: Defense Issues.

**Plaintiffs' Objections:** Florida law prohibits the Defendants from presenting evidence of subsequent medical malpractice or for alleged aggravation of injuries by medical providers. *Stuart v. Hertz Corp.*, 351 So.2d 703, 706 (Fla. 1977); *Holmes Reg'l Med. Ctr., Inc. v. Allstate Ins. Co.*, 225 So.3d 780, 783-784 (Fla. 2017). In the event the any such argument or evidence is presented to the jury, or any submission is made to the jury regarding the conduct of Dr. Picca, Plaintiff would request the Court give the following instruction:

## PLAINTIFF'S ALTERNATIVE REQUESTED JURY INSTRUCTION NO. 26

If you find that Bard caused injury or damage to Denise Ocasio, then Bard is also responsible for any additional injury or damage caused by medical care or treatment reasonably obtained by Denise Ocasio.

Source: Fla. SJI 505.5(c).

## BARD'S REQUESTED JURY INSTRUCTION NO. 27

Negligence is the failure to use reasonable care, which is the care that a reasonably careful person would use under like circumstances. Negligence is doing something that a reasonably careful person would not do under like circumstances or failing to do something that a reasonably careful person would do under like circumstances.

Negligence is a legal cause of damage if it directly and in natural and continuous sequence produces or contributes to producing such damage, so that it can reasonably be said that, but for the negligence, the damage would not have occurred.

Authority:      See Fla. Std. Jury Instr. 401.4 and 401.12.

Plaintiffs' Objections: The proposed instruction is likely to cause jury confusion if given to the jury along with Plaintiff's Proposed Jury Instruction No. 16 (concerning Bard's negligence) because it speaks to the negligence of "a person" in general and does not make clear that the negligence in question is the alleged negligence of a medical provider. The only correct instruction on negligence in this case is Plaintiffs' Proposed Jury Instruction No. 16. Florida law prohibits the Defendants from presenting evidence of subsequent medical malpractice or for alleged aggravation of injuries by medical providers. *Stuart v. Hertz Corp.*, 351 So.2d 703, 706 (Fla. 1977); *Holmes Reg'l Med. Ctr., Inc. v. Allstate Ins. Co.,* 225 So.3d 780, 783-784 (Fla. 2017). In the event the any submission is made, or evidence shown to the jury, regarding the conduct of Dr. Picca, Plaintiff would request submission of an instruction under Fla. SJI 505.5(c), as set forth in Plaintiffs' Alternative Requested Jury Instruction No. 26, above. Further, while Plaintiff contends would be harmful error to give the jury any instruction whatsoever regarding the negligence of a medical provider in this case, Bard's proposed instruction is also improper because it does not correctly instruct the jury on the standard of care in applicable to claims of medical negligence, as set forth in Fla. Stat. 766.102(1) and (2). *See also* Fla. SJI 402.4 (providing correct form of instruction for medical negligence claims).

## BARD'S REQUESTED JURY INSTRUCTION NO. 28.

If the preponderance of the evidence does not support Defendants' defense and the preponderance of the evidence supports Plaintiffs' claims, you should decide and write on the verdict form what percentage of the total responsibility of both defendants was caused by each defendant.

If, however, the preponderance of the evidence shows that Defendants and Dr. Picca were at fault or responsible and that the fault or responsibility of each contributed as a legal cause of damage sustained by Plaintiff Denise Ocasio, you should decide and write on the verdict form what percentage of the total fault or responsibility of Defendants and Dr. Picca was caused by each of them.

Authority:     Fla. Std. Jury Instr. (Civ.) 403.19: Burden of Proof on Defense Issues (modified to reflect preponderance of the evidence burden and concept of fault)

Plaintiffs' Objections:  Florida law prohibits the Defendants from presenting evidence of subsequent medical malpractice or for alleged aggravation of injuries by medical providers. *Stuart v. Hertz Corp.*, 351 So.2d 703, 706 (Fla. 1977); *Holmes Reg'l Med. Ctr., Inc. v. Allstate Ins. Co.*, 225 So.3d 780, 783-784 (Fla. 2017).

In the event the any such argument or evidence is presented to the jury, or any submission is made to the jury regarding the conduct of Dr. Picca, Plaintiff would request the Court give Plaintiffs' Proposed Alternative Jury Instruction No. 26.

## BARD'S REQUESTED JURY INSTRUCTION NO. 29

If you find for Bard on Plaintiffs' claim, you will not consider the matter of damages. But, if you find for Plaintiff Denise Ocasio, you should award Plaintiffs an amount of money that the preponderance of the evidence shows will fairly and adequately compensate them for their damage, including any damage she is reasonably certain to experience in the future.  You should consider the following elements:

Any bodily injury sustained by Denise Ocasio and any resulting pain and suffering [disability or physical impairment] [disfigurement] [mental anguish] [inconvenience] [or] [loss of capacity for the enjoyment of life] experienced in the past [or to be experienced in the future]. There is no exact standard for measuring such damage. The amount should be fair and just in the light of the evidence.

The reasonable [value] [or] [expense] of [hospitalization and] medical [and nursing] care and treatment necessarily or reasonably obtained by Denise Ocasio in the past [or to be so obtained in the future].

[Any earnings] [Any working time] lost in the past [and any loss of ability to earn money in the future].

On the claim brought by Carmelo Ocasio, you should award Carmelo Ocasio an amount of money which the preponderance of the evidence shows will fairly and adequately compensate Carmelo Ocasio for any loss by reason of his wife's injury, of her services, comfort, society and attentions in the past [and in the future] caused by the incident in question.

Authority:      Fla. Std. Jury Instr. (Civ.) 501.1 & 501.2.
                (modified to reflect preponderance of the evidence burden).

**Plaintiffs' Objections:**

This non-standard instruction does not accurately reflect the elements of damages the Ocasios maintain should be submitted to the jury in this case, which are set forth in the instruction below:

## PLAINTIFFS' REQUESTED JURY NO. 29

If your verdict is for Bard, you will not consider the matter of damages. But if the preponderance of the evidence supports one or more of the Ocasios' claims, you should determine and write on the verdict form, in dollars, the total amount of loss, injury or damage that the preponderance of the evidence shows will fairly and adequately compensate her for her loss, injury or damage, including any damages that the Ocasios are reasonably certain to incur or experience in the future.  You shall consider the following elements:

Any bodily injury sustained by Denise Ocasio and any resulting pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience, or loss of capacity for the enjoyment of life experienced in the past or to be experienced in the future. There is no exact standard for measuring such damage. The amount should be fair and just in the light of the evidence; and

The reasonable value or expense of hospitalization and medical and nursing care and treatment necessarily or reasonably obtained by Denise Ocasio in the past and to be so obtained in the future.

Any loss of ability to earn money sustained in the past and any such loss in the future.

On the loss of consortium claim brought by Carmelo Ocasio, you should award Carmelo Ocasio an amount of money which the preponderance of the evidence shows will fairly and adequately compensate Carmelo Ocasio for any loss by reason of his wife's injury,

of her services, comfort, society and attentions in the past and in the future caused by the incident in question.

Source:  Fla. SJI 501.1; Fla. SJI 501.2a-d.

## BARD'S REQUESTED JURY INSTRUCTION NO. 30

In determining the total amount of damages, you should not make any reduction because of the negligence, if any, of Dr. Picca.  The court in entering judgment will make any appropriate reductions.

Authority:          Fla. Std. Jury Instr. (Civ.) 501.4:  Comparative Negligence, etc.

**Plaintiffs' Objections:**  Florida law prohibits the Defendants from presenting evidence of subsequent medical malpractice or for alleged aggravation of injuries by medical providers. *Stuart v. Hertz Corp.*, 351 So.2d 703, 706 (Fla. 1977); *Holmes Reg'l Med. Ctr., Inc. v. Allstate Ins. Co.*, 225 So.3d 780, 783-784 (Fla. 2017).  In the event the any such argument or evidence is presented to the jury, or any submission is made to the jury regarding the conduct of Dr. Picca, Plaintiff would request the Court give Plaintiffs' Proposed Alternative Jury Instruction No. 26.

## <u>JOINT REQUESTED JURY INSTRUCTION NO. 31</u>

If the preponderance of the evidence shows that Denise Ocasio has been permanently injured, you may consider her life expectancy. The mortality tables received in evidence may be considered in determining how long Denise Ocasio may be expected to live. Mortality tables are not binding on you but may be considered together with other evidence in the case bearing on Denise Ocasio's health, age and physical condition, before and after the injury, in determining the probable length of her life.

<u>Authority</u>:      Fla. Std. Jury Instr. (Civ.) 501.6:  Mortality Tables
(modified to reflect preponderance of the evidence burden).

## JOINT REQUESTED JURY INSTRUCTION NO. 32

Any amount of damages which you allow for future medical expenses and loss of ability to earn money in the future should be reduced to its present money value and only the present money value of these future economic damages should be included in your verdict.

The present money value of future economic damages is the sum of money needed now which, together with what that sum will earn in the future, will compensate a plaintiff for these losses as they are actually experienced in future years.

Authority:        Fla. Std. Jury Instr. (Civ.) 501.7:  Reduction of Damages to Present Value.

## BARD'S REQUESTED JURY INSTRUCTION NO. 33

In considering the issue of a plaintiff's damages, you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of that plaintiff's damages, no more and no less.  Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize Bard.  Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

<u>Authority</u>:      Eleventh Circuit Civil Pattern Jury Instructions (2005)
                 Breach of Fiduciary Duty, State Claims 3.3.

<u>Plaintiffs' Objections:</u> Bard has identified no authority under Florida law for this instruction. The jury instructions as submitted *without* this instruction properly instruct the jury on the burden of proof, the need to avoid speculation, and the manner in which to consider evidence; this instruction would be cumulative of the other instructions and likely to introduce confusion and inconsistency in the jury's findings. The proposed instruction that "compensatory damages" must not be based on "speculation or guesswork," together with its reference to the undefined term of art "actual damages," will introduce jury confusion and error because, among other things, may confuse the jury on the standards for recovery of future damages under Florida law, which may be awarded notwithstanding the fact that they are "by nature, less certain than past damages." *Allstate Ins. Co. v. Manasse*, 707 So. 2d 1110, 1111 (Fla. 1998).

## BARD'S REQUESTED JURY INSTRUCTION NO. 34

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages - - that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So, if you should find from a preponderance of the evidence that the plaintiff failed to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage, then you should reduce the amount of the plaintiff's damages by the amount that could have been reasonably realized if the plaintiff had taken advantage of such opportunity.

Authority:    *State ex. rel. Dresskell v. City of Miami*, 153 Fla. 90, 94, 13 So. 2d 707 (1943) ("The principle of 'avoidable consequences' upon which the reduction of damages rule is grounded .... finds its application in virtually every type of case in which the recovery of a money judgment or award is authorized .... It addresses itself to the equity of the law that a plaintiff should not recover for those consequences of defendant's act which were readily avoidable by the plaintiff.").

**Plaintiffs' Objections:** Plaintiffs object to this request as there is no evidence Ms. Occasio failed to reduce or minimize her loss or damages. Further, the instruction fails to define the proper scope of a person's duty to mitigate in product liability and/or personal injury cases under Florida law or to otherwise define what is a "reasonable opportunity that may have existed under the circumstances," thus permitting the jury to make a finding of failure to mitigate that is inconsistent with Florida law. *See, e.g. Mack v. Garcia*, 433 So. 2d 17, 18 (Fla. Dist. Ct. App. 1983) (holding that instruction on mitigation in medical malpractice case was reversible error, and explaining that "[p]ublic policy dictates… that a patient does not have an obligation or duty to determine whether an injury is being properly treated by a physician."). Nor has Bard identified any Florida authority supporting the proffered instruction on a duty to mitigate. Indeed, the proffered definition of the duty to mitigate is inconsistent with the sole case Bard cites as authority—an employment law matter—in which the Court limited the duty to "those consequences of defendant's act which were *readily avoidable* by the plaintiff." 13 So.2d at 94

(emphasis added). This non-standard instruction is an inappropriate comment on the weight of the evidence

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 35

There is an additional claim in this case that you must decide. If you find for the Ocasios and against Bard, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Bard and as a deterrent to others.

The trial of the punitive damages issue is divided into two parts. In this first part, you will decide whether the conduct of Bard is such that punitive damages are warranted. If you decide that punitive damages are warranted, we will proceed to the second part of that issue during which the parties may present additional evidence and argument on the issue of punitive damages. I will then give you additional instructions, after which you will decide whether, in your discretion, punitive damages will be assessed and, if so, the amount. If you return for the presentation of additional evidence and argument, that phase of the trial is expected to last no longer than one day.[5]

The Ocasios claim that punitive damages should be awarded against Bard for the acts of its managing agents in connection with the design, testing, marketing, and sale of the Bard G2®X Filter. Punitive damages are warranted against Bard if you find by clear and convincing evidence that its managing officials were personally guilty of intentional misconduct or gross negligence which was a substantial cause of loss, injury or damage to Denise Ocasio. Under those circumstances you may, in your discretion, award punitive damages against Bard. If clear and convincing evidence does not show such conduct by Bard's managing agents, punitive damages are not warranted against Bard.

---

[5] Last clause added to clarify that the second phase would not be another multi-week trial. Routinely given in *Engle* progeny cases in Florida state court.

The Ocasios also claim that punitive damages should be awarded against Bard for its employees' conduct in in connection with the design, testing, manufacture, marketing, and sale of the Bard G2®X Filter.  Punitive damages are warranted if you find by clear and convincing evidence that its employees were personally guilty of intentional misconduct or gross negligence, which was a substantial cause of loss, injury or damage to Denise Ocasio and that:

(A)   Bard actively and knowingly participated in such conduct of its employee; or
(B)   Bard's officers, directors, or managers knowingly condoned, ratified, or consented to such conduct; or
(C)   Bard engaged in conduct that constituted gross negligence and that contributed to the loss, damage or injury to Denise Ocasio.

Under those circumstances you may, in your discretion, award punitive damages against Bard.  If clear and convincing evidence does not show such conduct by its employees, punitive damages are not warranted against Bard.

"Intentional misconduct" means that the managing agent or employee had actual knowledge of the wrongfulness of their conduct and there was a high probability of injury or damage to Denise Ocasio and, despite that knowledge, he or she intentionally pursued that course of conduct, resulting in loss, injury or damage.

"Gross negligence" means that the conduct of the managing agent or employee was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

"Clear and convincing evidence" is a higher standard of proof than proof by a "preponderance" of the evidence. It means the evidence must persuade you that the claim or defense is highly probable or reasonably certain.

Source: Fla. SJI 503.1a, 503.1b(2), 5031.b(4); 11th Cir. PJI 1.2 (defining "clear and convincing evidence.").

**Bard's objection(s)**:

On June 18, 2020, this Court ruled that "Plaintiffs' claim for punitive damages is barred." *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-36AEP, 2020 WL 3288026, at \*6 (M.D. Fla. June 18, 2020) (Honeywell, J.).  Given that ruling, this instruction is unnecessary and unwarranted.  Because the Court's ruling on punitive damages is clear, Bard withholds, but preserves its right to lodge if necessary, its other objections to this proposed instruction.

**Plaintiff's Response:**  Plaintiffs maintain that the submission of punitive damages to the jury is supported by Florida law and by the evidence offered both at the summary judgment stage and that will be adduced at trial.  In particular, Bard failed to meet its burden of proof under section 768.73(2)(a), Florida Statutes, because it did not establish prior to trial that it had previously been subject to an award in an action "alleging harm against that defendant from the same act or single course of conduct for which the claimant seeks compensatory damages."  The award upon which Bard relied, *in Sherr-Unia Booker v. C.R. Bard, Inc., et al.,* No. CV-16-00474-PHX-DGC (D. Ariz.), is not final and Bard is seeking to have it vacated by the Ninth Circuit court of appeals in Cause No. 18-16349.  Further, that award was predicated on failure to warn, which is not at issue in this case. *See Booker v. C. R. Bard, Inc. (In re Bard IVC Filters Prods. Liab. Litig.),* No. MDL 15- 02641-PHX DGC, 2018 U.S. Dist. LEXIS 102264, at \*72-73 (D. Ariz. June 19, 2018) (Explaining that the "jury found Defendants liable [only] on the negligent failure to warn claim and awarded Plaintiff $1.6 million in compensatory damages and $2 million in punitive damages).

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 36

When considering whether to award punitive damages, you may consider any harm caused to Denise Ocasio.

You also may consider harms suffered by other persons not parties to this lawsuit caused by the conduct that harmed Denise Ocasio in assessing the reprehensibility or wrongfulness of Bard's acts as proven in this case, although you may not seek to punish Bard directly for any harms suffered by any persons other than Denise Ocasio.

<u>Source</u>:  *Philip Morris USA Inc. v. Williams*, 549 U.S. 346 (2007).


**Bard's objection(s)**:

On June 18, 2020, this Court ruled that "Plaintiffs' claim for punitive damages is barred." *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-36AEP, 2020 WL 3288026, at *6 (M.D. Fla. June 18, 2020) (Honeywell, J.).  Given that ruling, this instruction is unnecessary and unwarranted.  Because the Court's ruling on punitive damages is clear, Bard withholds, but preserves its right to lodge if necessary, its other objections to this proposed instruction.

**Plaintiff's Response:**  Plaintiffs maintain that the submission of punitive damages to the jury is supported by Florida law and by the evidence offered both at the summary judgment stage and that will be adduced at trial.  In particular, Bard failed to meet its burden of proof under section 768.73(2)(a), Florida Statutes, because it did not establish prior to trial that it had previously been subject to an award in an action "alleging harm against that defendant from the same act or single course of conduct for which the claimant seeks compensatory damages."  The award upon which Bard relied, *in Sherr-Unia Booker v. C.R. Bard, Inc., et al.,* No. CV-16-00474-PHX-DGC (D. Ariz.), is not final and Bard is seeking to have it vacated by the Ninth Circuit court of appeals in Cause No. 18-16349.  Further, that award was predicated on failure to warn, which is not at issue in this case. *See Booker v. C. R. Bard, Inc. (In re Bard IVC Filters Prods. Liab. Litig.),* No. MDL 15- 02641-PHX DGC, 2018 U.S. Dist. LEXIS 102264, at *72-73 (D. Ariz. June 19, 2018) (Explaining that the "jury found Defendants liable [only] on the negligent failure to warn claim and awarded Plaintiff $1.6 million in compensatory damages and $2 million in punitive damages).

## <u>PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 37</u>

You are to decide the amount of punitive damages, if any, to be assessed as punishment against Bard and as a deterrent to others. This amount would be in addition to the compensatory damages you have previously awarded. In making this determination, you should consider the following:

    (A)    the nature, extent and degree of misconduct and the related circumstances, including the following:

        i.    whether the wrongful conduct was motivated solely by unreasonable financial gain; and

        ii.    whether the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known by Bard through a managing agent, director, officer, or other person responsible for making policy decisions on Bard's behalf; and

    (B)    Bard's financial resources.

You may in your discretion decline to assess punitive damages.

<u>Source:</u> Fla. SJI 503.1c(2).

**<u>Bard's objection(s)</u>:**

On June 18, 2020, this Court ruled that "Plaintiffs' claim for punitive damages is barred." *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-36AEP, 2020 WL 3288026, at *6 (M.D. Fla. June 18, 2020) (Honeywell, J.).  Given that ruling, this instruction is unnecessary and unwarranted.  Because the Court's ruling on punitive damages is clear, Bard withholds, but preserves its right to lodge if necessary, its other objections to this proposed instruction.

**<u>Plaintiff's Response:</u>**  Plaintiffs maintain that the submission of punitive damages to the jury is supported by Florida law and by the evidence offered both at the summary judgment stage and that will be adduced at trial.  In particular, Bard failed to meet its burden of proof under section 768.73(2)(a), Florida Statutes, because it did not establish prior to trial that it had previously been subject to an award in an action "alleging harm against that defendant from the same act or single course of conduct for which the claimant seeks compensatory damages."  The award upon which Bard relied, *in Sherr-Unia Booker v. C.R. Bard, Inc., et al.,* No. CV-16-00474-PHX-DGC (D. Ariz.), is not final and Bard is seeking to have it vacated by the Ninth Circuit court of appeals in Cause No. 18-16349.  Further, that award was predicated on failure to warn, which is not at issue in this case. *See Booker v. C. R. Bard, Inc. (In re Bard IVC Filters Prods. Liab. Litig.),* No. MDL 15- 02641-PHX DGC, 2018 U.S. Dist. LEXIS 102264, at *72-73 (D. Ariz. June 19, 2018) (Explaining that the "jury found Defendants liable [only] on the negligent failure to warn claim and awarded Plaintiff $1.6 million in compensatory damages and $2 million in punitive damages).

## PLAINTIFFS' REQUESTED JURY INSTRUCTION NO. 38

If you decide to award punitive damages, the award should be no greater than the amount that you find necessary to punish Bard for the harm caused to Denise Ocasio and to deter Bard and others similarly situated from engaging in such misconduct in the future.

You may not award damages against Bard for harms suffered by anyone other than Denise Ocasio.

There must be a reasonable relationship between any amount of punitive damages you award and the amount compensatory damages you have awarded.

**Bard's objection(s)**:

On June 18, 2020, this Court ruled that "Plaintiffs' claim for punitive damages is barred." *Ocasio v. C.R. Bard, Inc.*, No. 8:13-cv-1962-T-36AEP, 2020 WL 3288026, at *6 (M.D. Fla. June 18, 2020) (Honeywell, J.).   Given that ruling, this instruction is unnecessary and unwarranted.  Because the Court's ruling on punitive damages is clear, Bard withholds, but preserves its right to lodge if necessary, its other objections to this proposed instruction.

**Plaintiff's Response:**  Plaintiffs maintain that the submission of punitive damages to the jury is supported by Florida law and by the evidence offered both at the summary judgment stage and that will be adduced at trial.  In particular, Bard failed to meet its burden of proof under section 768.73(2)(a), Florida Statutes, because it did not establish prior to trial that it had previously been subject to an award in an action "alleging harm against that defendant from the same act or single course of conduct for which the claimant seeks compensatory damages."  The award upon which Bard relied, *in Sherr-Unia Booker v. C.R. Bard, Inc., et al.,* No. CV-16-00474-PHX-DGC (D. Ariz.), is not final and Bard is seeking to have it vacated by the Ninth Circuit court of appeals in Cause No. 18-16349.  Further, that award was predicated on failure to warn, which is not at issue in this case. *See Booker v. C. R. Bard, Inc. (In re Bard IVC Filters Prods. Liab. Litig.),* No. MDL 15- 02641-PHX DGC, 2018 U.S. Dist. LEXIS 102264, at *72-73 (D. Ariz. June 19, 2018) (Explaining that the "jury found Defendants liable [only] on the negligent failure to warn claim and awarded Plaintiff $1.6 million in compensatory damages and $2 million in punitive damages).

## JOINT REQUESTED JURY INSTRUCTION NO. 39

Of course, the fact that I have given you instructions concerning the issue of Plaintiffs' damages should not be interpreted in any way as an indication that I believe that the Plaintiffs should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree.  Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors.  So you must discuss the case with one another and try to reach an agreement.  While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong.  But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

Authority:     Eleventh Circuit Civil Pattern Jury Instruction 3.8 (2020).

## JOINT REQUESTED JURY INSTRUCTION NO. 40

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

Authority:    Eleventh Circuit Civil Pattern Jury Instruction 3.9 (2020).