UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE OCASIO, an individual, and
CARMELO OCASIO, an individual,

    Plaintiffs,

vs.                                                      Case No.: 8:13-cv-01962-CEH-AEP

C. R. BARD, INC., a New Jersey corporation,
BARD PERIPHERAL VASCULAR, INC., (a
subsidiary and/or division of defendant C. R.
BARD, INC.) an Arizona corporation,

    Defendants.

---

### DEFENDANTS C. R. BARD, INC. AND BARD PERIPHERAL VASCULAR, INC.'S BENCH BRIEF TO EXCLUDE BARD'S DOCUMENTS DEVELOPING DESIGN IDEAS FOR LATER INCORPORATION INTO FUTURE GENERATIONS OF ITS IVC FILTERS

Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") hereby submit this bench brief respectfully requesting the Court to exclude at trial all evidence or arguments concerning Bard's documents that pre-date the implant of Plaintiffs' IVC filter and that develop design changes for later incorporation into future generations of Bard's IVC filters.

### I.    BACKGROUND

With the depositions of Robert Carr and Michael Randall[1] seek to introduce Bard's Product Opportunity Assessments ("POA")[2] for filters that were not available until 2011 or 2013. POAs are created by the marketing department to discuss the development and discussion of new design

---

[1] Both of these depositions were designated by Plaintiff after the deadline for filing motions in limine. Randall was designated before the pretrial conference and Carr was allowed by the Court at the pretrial conference. The parties have met and conferred and were not able to reach an agreement on this issue.

[2] POA's are internal Bard documents used for making the business case for obtaining funding for the research and development of a new filter or a feature to be added to a filter. They also include financial information.

ideas to be implemented by Bard into the future generations of its IVC filters. These documents pre-date the implant of the subject filter in Plaintiff Denise Ocasio. But importantly, the documents discuss and develop new design changes for possible incorporation into future generations of Bard's filters that were not feasible at the time of manufacture of the subject filter and could not have been made when the subject filter was manufactured. The Meridian filter (Eclipse with anchors) was not cleared for sale until 2011 and the Denali was not cleared for sale until 2013. Because the design changes and filters referenced in the POA documents had not been developed or cleared by the FDA at the time of the subject filter's manufacture, the documents are not relevant to the issue of whether the subject filter was defective and should not be admissible at trial. Further, such documents must also be excluded because they will only mislead and confuse the jury and will unfairly prejudice Bard.

## II. ARGUMENT AND CITATION OF AUTHORITY

Bard's request to exclude the POAs on later generation filters does not rely on Fed. R. Evid. 407. In light of the fact that the courts have generally ruled that Rule 407 does not govern admissibility of pre-injury design changes, Bard does not argue that Rule 407 applies to the POA documents. Instead, Bard's request to exclude is based on Fed. R. Evid. 401, 402, and 403.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. *See* Fed. R. Evid. 402. Even relevant evidence should be excluded when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

In the context of a product liability case, it is a well-recognized principle under Florida law that the issue is whether a product was defective <u>at the time of its manufacture and sale</u>. *See Light v. Weldarc Co.*, 569 So. 2d 1302, 1304 (Fla. Dist. Ct. App. 1990) ("the focus under this claim is upon the product as sold ... [t]he issue to be resolved is whether the product, at the time it left the seller's hands," is defective); *Builders Shoring & Scaffolding Equip. Co. v. Schmidt*, 411 So. 2d 1004, 1006 (Fla. Dist. Ct. App. 1982) (plaintiff must demonstrate defect existed when product left hands of manufacturer); *see also Pantages v. Cardinal Health 200, Inc.*, No. 508-CV-116-OC-GRJ, 2009 WL 2244536, at *3 (M.D. Fla. July 27, 2009) ("In a products liability suit against a manufacturer, whether sounding in negligence or strict liability, the plaintiff must show that the product is defective, that the defect existed at the time the product left the manufacturer's possession, and that the product's defect caused the injuries of which Plaintiff complains."); *Valencia v. Sanborn Mfg. Co.*, No. 04-21416-CIV, 2005 WL 5957819, at *13 (S.D. Fla. Aug. 11, 2005) ("[T]he threshold question under both theories of liability (negligence and strict liability) is whether the [product] had a defect at the time of its manufacture and sale.").

Importantly, Florida law has also recognized that if the pre-injury, post-manufacture design modifications are not feasible at the time of manufacture, then they are not relevant to the issue of defectiveness. *See Keller Indus. v. Volk*, 657 So. 2d 1200, 1204 (Fla. Dist. Ct. App. 1995) ("[B]ecause the design change must have been feasible at the time of manufacture, if the improvement could not have been made when the product was manufactured, then the improvement is, as a matter of law, irrelevant to the issue of defectiveness."); *Ellis v. Golconda Corp.*, 352 So. 2d 1221, 1224 (Fla. Dist. Ct. App. 1977) (holding that a pre-accident design change was not relevant to defectiveness of valve where the improvement was based on technology not available at the time of manufacture).

Courts have routinely excluded evidence of pre-injury, post-manufacture design changes pursuant to Rules 401, 402, and 403. The Florida intermediate appellate court in *Keller Indus.* cited and agreed with the following the then Fifth Circuit Court of Appeals cases:

> The Fifth Circuit held in *Roberts* [*v. Harnischfeger Corp.*, 901 F.2d 42, 44 (5th Cir. 1989)] that a post manufacture, pre-accident addition of a warning device was irrelevant because the device had not been developed at the time of manufacture [and that the trial judge properly excluded such evidence under Rules 402 and 403]. The court places its reliance upon its earlier opinion in *Grenada Steel Industries v. Alabama Oxygen Co.,* 695 F.2d 883 (5th Cir.1983), wherein the court had noted: "Alternative designs may indicate that the product was unreasonably dangerous ..., but only if they were available at the time of manufacture." We agree. Had the later-model stepladder been impossible to manufacture at the time the subject stepladder was manufactured, it would be irrelevant.

*Keller Indus.*, 657 So. 2d at 1204 & n. 1 (Fla. Dist. Ct. App. 1995). The Florida appellate court in *Keller Indus.* also cited to *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523-24 (1st Cir. 1991), in which the First Circuit Court of Appeals held that the district court did not abuse its discretion in ruling that evidence of pre-injury, post-manufacture design modifications "was only marginally relevant and excluding the evidence under Rule 403." *Id.* at 1523. The court in *Raymond* explained that the "introduction of evidence of pre-accident design modifications not made effective until after the manufacture of the allegedly defective product may reasonably be found unfairly prejudicial to the defendant and misleading to the jury for determining the question whether the product was unreasonably dangerous at the time of manufacture and sale." *Id.* at 1524.

In this case, the real issue is whether the subject filter had a design defect at the time it was manufactured, sold and implanted in Mrs. Ocasio. The jury's attention should be directed to this issue, and not to irrelevant and prejudicial references to Bard's design ideas later incorporated into future generations of filters. These pre-injury, post-manufacture design changes were not feasible at the time of the subject filter's manufacture and could not have been incorporated into the subject

filter when it was manufactured and sold.[3] Thus, such evidence is not relevant and must be excluded under Fed. R. Evid. 402. Even if this evidence had some scant probative value, which Bard denies, it is far outweighed by the danger of unfair prejudice. The introduction of this evidence threatens to confuse the issues and mislead the jury by diverting its attention from whether the design of the filter at issue was defective at the time it was manufactured. Evidence of Bard's new design ideas for future generations of its filters would distract the jury from the relevant time frame and likely would improperly suggest to the jury the presence of a defect in the prior filter design at issue. The law encourages manufacturers to constantly improve the quality and safety of their products by excluding this type of prejudicial evidence. As a result, evidence of Bard's pre-injury, post-manufacture design ideas for future filters must also be excluded under Fed. R. Evid. 403 because it will only serve to mislead and confuse the jury and will unfairly prejudice Bard.

### III.  CONCLUSION

For the reasons stated above, Bard respectfully requests that the Court exclude at trial all evidence or arguments concerning Bard's pre-implant documents that discuss design ideas later incorporated by Bard into future generations of its IVC filters.

*[SIGNATURES ON THE FOLLOWING PAGE]*

---

[3] Even if a prototype of a future filter existed in 2010 when Mrs. Ocasio's filter was implanted, it was not cleared by the FDA and could not have been sold or implanted in patients.

| | |
|---|---|
| Dated: July 6, 2021 | /s/ James F. Rogers |

                                      Edward W. Gerecke
                                      Florida Bar Number 328332
                                      David J. Walz
                                      Florida Bar Number 697237
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., Suite 1000 (33607)
Post Office Box 3239
Tampa, Florida 33601
Telephone:     (813) 223-7000
Facsimile:       (813) 229-4133
Email: egerecke@carltonfields.com
        dwalz@carltonfields.com

*and*

Matthew B. Lerner
Florida Bar Number 0548618
James F. Rogers
South Carolina Bar No. 012942
(admitted *pro hac vice*)
Elizabeth C. Helm
Georgia Bar No. 289930
(admitted *pro hac vice*)
Nelson Mullins Riley & Scarborough LLP
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, Georgia  30363
Phone:             (404) 322-6000
Facsimile:       (404) 422-6000
Email: matthew.lerner@nelsonmullins.com
       jim.rogers@nelsonmullins.com
       kate.helm@nelsonmullins.com

*Attorneys for Defendants*