UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE OCASIO, an individual, and
CARMELO OCASIO, an individual,

    Plaintiffs,

vs.

C. R. BARD, INC., a New Jersey corporation,
BARD PERIPHERAL VASCULAR, INC.,
(a subsidiary and/or division of defendant C.
R. BARD, INC.) an Arizona corporation,

    Defendants.

Case No. 8:13-cv-01962-SDM-AEP

Jury Demand

### PLAINTIFFS' TRIAL BRIEF IN SUPPORT OF UTILIZING THE CONSUMER EXPECTATIONS TEST

Plaintiffs file this Trial Brief in Support of Utilizing the Consumer Expectations Test and respectfully show the Court the following:

### SUMMARY OF ARGUMENT

Consumer expectations are the "linchpin" of the Second Restatement (Second) of Torts: Products Liability. *Aubin v. Union Carbide, Corp.,* 177 So.3d 489, 507 (Fla. 2015).

Bard's attempt to mandate use of the risk-utility test and jettison the consumer expectations standard in this strict product liability case is erroneous as a matter of law. Twice the Florida Supreme Court has adopted the consumer expectations standard and rejected the risk utility test for strict liability design defect cases. *See Aubin,* 177 So.3d at 494, 505-512; *In re Standard Jury Instructions in Civil Cases – Report No. 19-03*, 290 So.3d 840 (Fla. 2020). Moreover, contrary to Bard's argument, multiple Florida federal district courts have followed *Aubin* and applied the consumer expectations standard in strict liability medical device cases. *See, e.g., Pierre v. Intuitive*

1

*Surgical, Inc.,* 476 F.Supp.3d 1260, 1270-72 (S.D. Fla. 2020); *Kendall v. Boston Scientific Corp.,* 2018 WL 3910883, at *3-4 (M.D. Fla. April 17, 2018). Importantly, the *Pierre* court addressed and rejected Bard's exact argument that the risk utility test should be imposed because the product is "too complex." *Pierre,* 476 F.Supp. at 1270-71. Finally, Bard severely overstates and misinterprets *Cavanaugh v. Stryker Corp.,* 308 So.3d 149, 155-56 (Fla. 4th DCA 2020), because that opinion: (1) was limited to "the specific facts of the case;" (2) relied on pre-*Aubin* case law; and (3) expressly recognized that the consumer expectations standard is entirely appropriate in a medical device case where the standard jury instruction is modified to define the "consumer" as the physician – exactly the situation here.

## ARGUMENT

1.  Twice, the Florida Supreme Court has adopted the consumer expectations standard and rejected the risk-utility standard.

2.  In *Aubin,* the Florida Supreme Court specifically adopted the consumer expectations test, "which considers whether a product is unreasonably dangerous in design because it failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner." *Aubin,* 177 So.3d at 503. "[W]e conclude that the definition of design defect first enunciated in *West*,[1] which utilizes the consumer expectations test, instead of utilizing the risk utility test and requiring proof of a reasonable alternative design, best vindicates the purposes underlying the doctrine of strict liability." *Id.* at 494. The Florida Supreme Court did state that a plaintiff may offer evidence of the risk utility standard if he or she chooses to do so—but this is the plaintiff's option and ***not*** a requirement. *Id.* at 511. As one commentator has summarized the law post-*Aubin*: "It is now clear that the consumer expectations standard is the

---

[1] *West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla. 1976)

2

necessary standard to be utilized, not the risk utility standard.  Nevertheless, if a plaintiff has evidence that the defendant had a reasonable alternative design that was available and failed to use it, that evidence may be very helpful in persuading the jury." 6 Fla. Prac., Personal Injury & Wrongful Death Actions § 13.18.  Standards to apply in strict liability cases to determine whether a product is defective (West 2020-21 ed.).

3. In 2020, the Florida Supreme Court again recognized its holding in *Aubin* and the consumer expectations test when it authorized amendments to the Standard Jury Instructions in Civil Cases.  The Florida Supreme Court's amendments reflect that the consumer expectations test is the baseline instruction, while "a plaintiff may choose to prove a product's defectiveness through the risk/benefit test ***but is not required to do so*** pursuant to our decision in *Aubin v. Union Carbide Corp.,* 177 So.3d 489 (Fla. 2015)."  *See In re: Standard Jury Instructions in Civil Cases – Report No. 19-03,* 290 So.3d at 840 (emphasis added).  To further emphasize its holding in *Aubin* and the current state of Florida law, the Florida Supreme Court ***deleted*** Note 3 to the strict liability jury instruction (403.7), because the risk/benefit test could no longer be required for a plaintiff.  Thus, through its actions, the Florida Supreme Court has made it clear that the consumer expectations standard is the proper jury instruction for strict liability design defect cases. "Generally, the applicable standard jury instructions are presumed correct and should be given unless such instructions are erroneous or inadequate."  *Aubin,* 177 So.2d at 516, citing *Freeman v. State,* 761 So.2d 1055, 1071 (Fla. 2000) ("The standard jury instructions are presumed to be correct.").  Indeed, under this standard, it would be error to exclude the consumer expectations test and to require the risk utility test.

4. Contrary to Bard's argument, multiple Florida federal district courts have followed *Aubin* and applied the consumer expectations standard in strict liability medical device cases.

3

Tellingly, Bard failed to mention any of these cases to the Court. In *Pierre v. Intuitive Surgical, Inc.,* the plaintiff sought to prove strict product liability under the consumer expectations test, the risk utility test, and the reasonable alternative design test." *Pierre,* 476 F.Supp.3d at 1270. The district court stated: "According to the Florida Supreme Court, the consumer expectation test – as opposed to the risk utility test – is 'an essential part of determining a design defect; and 'best vindicates the purposes underlying the doctrine of strict liability.'" *Pierre,* 476 F.Supp.3d at 1270, *quoting Aubin,* 177 So.3d at 494.

5.  Nevertheless, identical to Bard, "Intuitive argue[d] that the Court should depart from the consumer expectation test in circumstances such as here, where the product is 'too complex for the ordinary consumer to have any expectations concerning their proper operation.'" *Id.* The district court rejected Intuitive's argument, first noting that that all of the cases cited by the defendant were decided before *Aubin*—where "the Florida Supreme Court reversed an appellate court decision for requiring plaintiff to provide a reasonable alternative design and adopting the risk utility test to the exclusion of the consumer expectation test." *Id.* at 1271. The district court further wrote:

> [T]he Florida Supreme Court emphasized the role manufacturers play 'in crafting the image of a product and establishing the consumers' expectations for that product, a portrayal which in turn motivates consumers to purchase that particular product.' *Aubin,* 177 So.3d at 511. And because of this, the consumer expectation test – as opposed to the risk utility test – rightfully places the burden on manufacturers, not injured consumers. *Id.* at 510-11. Furthermore, the Florida Supreme Court has 'rejected applying legal principles that are inconsistent with [this] general philosophy. . . .' *Id.* at 503.
>
> * * *
>
> Medical device manufacturers generally do not market their products to 'ordinary consumers.' Rather, medical device manufacturers promote and advertise their products to intermediaries, such as hospitals, physicians, and other trained medical professionals. However, this alone does not warrant departure from the consumer expectation test. Merely relying on who a manufacturer markets its products to

> does not over come one of the main policy justifications in *Aubin* – maintaining the burden on the manufacturer as opposed to the injured consumer.  Therefore, the Court *must* consider the ordinary consumer's expectation in its design defect analysis.  (emphasis added).

*Pierre,* 476 F.Supp.3d at 1271.  Therefore, the Court should apply the consumer expectations test and reject Bard's legally meritless attempt to impose the risk utility test as the only standard.

6. Similarly, in *Kendall v. Boston Scientific,* the defendant sought dismissal of plaintiff's design and manufacturing defect claims for her alleged failure to set forth the elements of the risk utility standard.  *Kendall*, 2018 WL 3910883, at *3.  The district court denied the motion to dismiss, writing that the Florida Supreme Court in *Aubin* "expressly refused to adopt the Third Restatement and its requirement for plaintiff to demonstrate that a reasonable alternative design exists. *Id.* at *4.  Thus, *Kendall* reiterates the rule of *Aubin* for a strict liability design defect case against a medical device manufacturer:  Under Florida law, the consumer expectations test is the standard, while the plaintiff is permitted to offer proof under the risk utility test if he or she chooses to do so.  *See also Douse v. Boston Scientific Corp.,* 314 F.Supp.3d 1251 (M.D. Fla. 2018); *Davis v. Boston Scientific Corp.,* 2018 WL 2183885 (M.D. Fla. May 11, 2018) (both cases allowing strict liability claims against IVC Filter device manufacturers to proceed under the consumer expectations test; so apparently an IVC filter is not "too complex" for the consumer expectations test).

7. Faced with overwhelming case law against its position, Bard overstates and misinterprets *Cavanaugh v. Stryker Corp.,* 308 So.3d 149 (Fla. 4th DCA 2020).  Contrary to Bard's argument, the *Cavanaugh* court did not sound the death knell for the consumer expectations test for a design defect claim against a medical device maker.  In fact, *Cavanaugh* laid out a specific roadmap for use of the consumer expectations test in a medical device case—as it turns out, the exact same roadmap which Plaintiffs propose should be used herein. (*See* Plaintiffs' Notice of

Filing an Amended Proposed Jury Instruction No. 15 and Amended Verdict Form). [ECF No. 387]. In *Cavanaugh,* the 4th District Court of Appeals expressly recognized that the consumer standard is entirely appropriate in a medical device case where the standard jury instruction is modified to define the "consumer" as the physician – thereby taking into account that the medical device is provided to the end consumer through an intermediary. *Id.* at 156. The plaintiff in *Cavanaugh,* however, did not attempt to modify the jury instruction to clarify that the relevant expectation belonged to her physician. *Id.* It was on this very narrow ground "under the specific facts of this case" that the intermediate appellate court affirmed a jury instruction that omitted the consumer expectation test. *Id.* In the case at bar, on the other hand, the Plaintiffs propose submitting the exact jury instruction modification described favorably by *Cavanaugh*. Thus, the Ocasio Plaintiffs proposed jury instruction is in full accord with all Florida case law and the Florida Standard Jury Instructions, and the Court should utilize the consumer expectations standard in this case.

8.      Finally, it is worth noting that similar to *Pierre,* the cases cited by the *Cavanaugh* court and bootstrapped by Bard were decided pre-*Aubin*. In fact, the only state court case cited in the *Cavanaugh* opinion, *Force v. Ford Motor Co.,* 879 So.2d 103 (Fla. 5th DCA 2004), was actually **deleted** as part of the now-stricken Note 3 to Standard Jury Instruction 403.7. *See In re Standard Jury Instructions in Civil Cases – Report No. 19-03,* 290 So.3d at 843. And as previously discussed, the district court in *Pierre* analyzed the same pre-*Aubin* cases presented in *Cavanaugh*, and found them unpersuasive—stating that they did not reflect the legal principles or general philosophy set forth in *Aubin*. In short, the Court should confine *Cavanaugh* to its own peculiar set of facts and utilize the consumer expectations standard for Plaintiff Ocasio's jury instructions.

## CONCLUSION

Under Florida law, the consumer expectations test is the standard for strict product liability design defect cases and the "linchpin" for the Restatement (Second) of Torts: Products Liability. Therefore, the Court should utilize the consumer expectations test and reject Bard's attempt to impose the risk utility test.

Respectfully submitted

**MARTIN BAUGHMAN, PLLC**

  */s/ Thomas Wm. Arbon*
Ben C. Martin, TX Bar No. 13052400
*Admitted Pro Hac Vice*
Thomas Wm. Arbon TX Bar No. 01284275
*Admitted Pro Hac Vice*
3710 Rawlins Street, Suite 1230
Dallas, Texas 752019
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com
tarbon@bencmartin.com

&

Joseph R. Johnson, FL Bar No. 372250
BABBITT & JOHNSON, P.A.
1641 Worthington Road, Ste. 100
West Palm Beach, FL 33409
Telephone: (561) 684-2500
Facsimile: (561)684-6308 E-mail:
jjohnson@babbitt-johnson.comm

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the above and foregoing was sent via ECF this 6th day of July 2021, to the following:

Edward W. Gerecke
David J. Walz
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd., Suite 1000 (33607)
Post Office Box 3239
Tampa, Florida 33601
P: (813) 223-7000
F: (813) 229-4133
egerecke@carltonfields.com
dwalz@carltonfields.com

*and*

Richard B. North
Matthew B. Lerner
Taylor T. Daly
Jane T. Davis
Mark R. Nash
Nelson Mullins Riley & Scarborough LLP
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, Georgia  30363
P: (404) 322-6000
F: (404) 422-6000
matthew.lerner@nelsonmullins.com
*Attorneys for Defendants*

                                                     */s/ Thomas Wm. Arbon*
                                                     Thomas Wm. Arbon